# Richmond.

## Herman W. Jones v. Commonwealth.

### January 15, 1925.

1. Intoxicating Liquors—*Forfeiture of Vehicle—Innocent Owner—Burden of Proof.*—Subsection 57 of section 4675 of the Code of 1919, as amended by Acts of 1922, page 573, provides that if it appears to the satisfaction of the court from the evidence that an owner of an automobile was ignorant of the illegal use to which it was put and that such illegal use was without his connivance or consent, express or implied, then the court shall have the right to relieve such owner from forfeiture. Under this provision, where illegal use is shown by the evidence, the burden of proof is upon the owner of the automobile to show to the satisfaction of the court that he was ignorant of such illegal use, and that it was without his connivance or consent.

2. Intoxicating Liquor—*Forfeiture of Vehicle—Relief of Innocent Owner—Discretion of Trial Court—Appeal.*—While under the provisions of subsection 57 of section 4675 of the Code of 1919, as amended by Acts of 1922, page 573, the relief from forfeiture rests largely in the discretion of the trial court, such discretion is reviewable, and, while its exercise ought not to be interfered with on appeal, where the evidence is doubtful and unconvincing, it may be so interfered with "in reasonably clear cases," when the appellate court "is satisfied that injustice has been done."

3. Intoxicating Liquors—*Forfeiture of Vehicle—Innocent Owner—Case at Bar.*—In the instant case, proceedings to forfeit an automobile, the evidence showed without contradiction that the owner of the automobile was a stranger in the city and that he was arrested about forty minutes after arriving in the city, that the owner met one H., a stranger, at the store of a friend and that H. asked him to do him the favor of driving him a short distance to a house to which he wished to go, that the owner consented and drove H. to the house where H. entered and bought a pint of whisky, that immediately after H. reentered the automobile, the owner and H. were arrested and the automobile taken into custody by the officers. It also appeared through the uncontradicted evidence of H. and the owner of the automobile that the owner knew nothing of H.'s intention of purchasing liquor at the house or that he had purchased it.

*Held:* That this evidence was sufficient to show that the owner of the

automobile was ignorant of the illegal use to which the same was put and that such illegal use was without his connivance or consent, express or implied.

4. INTOXICATING LIQUOR—*Forfeiture of Vehicle—Innocent Owner—Reputation of House where Liquor was Sold—Owner a Stranger.*—Where the question is whether the owner of an automobile was an innocent owner under the provisions of subsection 57 of section 4675 of the Code of 1919, as amended by Acts of 1922, page 573, the general reputation of a house in the city where liquor was obtained by a person in his car as being a place at which liquor could be procured, was, of course, merely a local reputation, and hence the owner, a resident of another city, could not be held to have had any knowledge, especially in view of the uncontradicted testimony of the owner giving his very limited acquaintance with the localities in the city.

5. INTOXICATING LIQUOR—*Forfeiture of Vehicle—Relief of Innocent Owner—Order by Appellate Court—Case at Bar.*—In the instant case, the automobile in question had been sold at the time the petition for a writ of error was presented. The petition prayed "that a writ of error, without supersedeas," may be awarded. There was no assignment of error touching the sale of the automobile or the order of the court as to the disposal of the surplus. The court had jurisdiction to enter the judgment of forfeiture. Though erroneous, it was not void, but valid until reversed. Not having been superseded, it was in full force and effect until reversed by the Supreme Court of Appeals. Hence that court could give the owner of the automobile no other relief than to remand the case with direction to the court below to direct the balance, after payment of costs and expenses of sale to be paid over to the owner of the automobile.

6. INTOXICATING LIQUOR—*Forfeiture of Vehicle—Forfeiture of Property of Innocent Owner—Power of Legislature.*—It is settled that the legislature has ample power to provide for the forfeiture of property employed in violation of the laws of the State, although the owner thereof has no guilty knowledge whatever that it is being put to such use. Therefore, legislation giving relief even to an innocent owner from such forfeiture is purely a matter of grace, and the legislature may attach such provisos or conditions thereto as it may prescribe and they will be valid.

7. INTOXICATING LIQUOR—*Forfeiture of Vehicle—Forfeiture of Property of Innocent Owner—Constitutionality of Statute Providing for Payment of Costs by Owner.*—Subsection 57 of section 4675 of the Code of 1919, as amended by Acts of 1922, page 573, providing that an innocent owner whose car has been seized for illegal use in the transportation of intoxicating liquors shall pay the costs incident to the capture and custody of the automobile and the trial of the cause, is valid as applied to all cases in which the evidence shows that the property was in fact put to illegal use for which the statute had declared it should be forfeited.

Error to a judgment of the Hustings Court of the city of Portsmouth.

*Reversed and remanded.*

This is a proceeding in which an automobile owned by the plaintiff in error, Herman W. Jones, was forfeited under the provisions of subsection 57 of section 4675 of the Code, as amended by Acts 1922, page 573, the provisions of which, material to the instant case, are as follows:

"When any officer charged with the enforcement of this law shall have any reason to believe that ardent spirits are being transported in any    *    *    automobile, *    *    contrary to law, he shall have the right and it shall be his duty to search such    *    *    automobile *    *    and to seize any and all ardent spirits found therein which are being transported contrary to law. Whenever any ardent spirits which are being illegally transported, or are being transported for an illegal use, shall be seized by an officer of the State of Virginia, he shall also take possession of the    *    *    automobile, *    *    and such    *    *    automobile    *    *    shall be forfeited to the Commonwealth;    *    *

"*    *    And provided further, that whenever a quantity of ardent spirits is illegally transported in any automobile    *    *    and it shall appear to the satisfaction of the court from the evidence that the owner    *    *    of such    *    *    automobile    *    *    was ignorant of the illegal use to which the same was put, and that such illegal use was without his connivance or consent, express or implied,    *    *    and that said innocent owner has perfected his title to the vehicle, if the same be an automobile, by proper transfer in the office of the Secretary of the Commonwealth, as provided by law, then such court shall have the right to relieve such owner    *    *

from the forfeiture herein provided; provided, however, such  *  *  innocent owner shall pay the costs incident to the capture and custody of such automobile *  *  and to the trial of said cause."

. The following was the evidence before the court below:

Officer Frank Snyder, for the Commonwealth, testified as follows:

"Officer Snyder testified that he was a policeman of the city of Portsmouth, Virginia, and that on the night in question, May 31, 1924, he, with two other officers, was assigned to watch the property occupied by a family named Foiles; and that this property is situated on Green street, near the Gosport road, in the city of Portsmouth, Virginia; that on the said night, about eleven thirty o'clock, he was in a position where he could watch the property and yet could not be seen by others; that while occupying this position he noticed a car drive up and stop in front of the house; that there were two men in the car when it drove up, one of the men, who subsequently proved to be W. C. Hyde, left the car and went into the house; that he stayed in the house but a few moments and returned and got in the car; that the car then started off when it was stopped by the officers; that Hyde and the other occupant of the car were questioned as to liquor and each denied that they had any liquor or knew of any liquor; that Hyde subsequently admitted that he had purchased a pint of liquor in this house from a woman named Foiles, and he produced the pint of liquor which he alleged he had purchased.  Jones did not leave the car from the time that the officers first saw the car until the men were placed under arrest.  When Hyde went in the house, Jones remained in the car, sitting behind the wheel and never left it; that Jones said that he had only known Hyde but a few moments

before the time he was placed under arrest; that he, Jones, also said that he had just arrived in the city of Portsmouth, from Richmond, about forty minutes before his arrest; that he had never met Hyde before that night and that he met him that night in the store of a friend on High street, a millinery establishment, and that Hyde had asked him if he would do him the favor to take him to some place that he wanted to go to; that Jones, not knowing where he wanted to go, promptly said yes and drove him to this place, arriving at the house under the directions given by Hyde, Hyde telling him which streets to go, at which corners to turn, etc., until they arrived at the house.    And Jones further contended that he had no knowledge as to Hyde's mission and that he certainly had no idea that Hyde intended to get liquor.    Officer Snyder further testified that this house of Foiles had the general reputation of being a place at which liquor could be procured."

W. C. Hyde testified as follows:

"That on the night in question he met Jones at a millinery shop on High street and that he asked him if he would not drive him to a place to which he was desirous of going; that he had never met Jones before that night; that Jones agreed to drive him to the place that he wanted to go to and that Jones had absolutely no knowledge as to the purpose of his visit; that he directed Jones what streets to drive over until they reached this house; that he got out of the car, asking Jones to remain for a few moments and he would return, and went in the house, procured the pint of liquor, placed it in his pocket and returned to the car; that Jones had no knowledge as to his possession of the liquor; that the officers stopped him and found the liquor on him and that they were both placed under arrest and the car ordered to be held; that Mr. Jones put up the necessary costs and gave bond

so that the car might be returned to his possession to await the final action of the court with reference to the car; that his purpose in going to the Foiles home was to buy liquor; that he did buy it; that he bought it for his own use from Mrs. Foiles and that Jones had no knowledge whatsoever as to his buying the liquor."

Herman W. Jones, owner and claimant of the car, testified as follows:

"That he resides in Richmond, where he is an operator in the offices of the Western Union Telegraph Company. That on Saturday, May 31, 1924, he drove in his automobile, with his wife and child, down to Portsmouth to spend the week-end with his sister living in Portsmouth. That on the night in question he had just arrived from the city of Richmond, about forty minutes prior to the arrest; that upon his arrival in Portsmouth he had gone to the millinery shop of a friend, and while there he was introduced to W. C. Hyde and that this was the first time he had ever met Hyde in his life; that Hyde requested him to do him a favor, that was to drive him to some place where he wanted to go; that he immediately responded that he would be glad to do him the favor, as it was not much trouble, Hyde having told him that he only wanted to go a short distance and would come right back; that he, Jones, knew the names of only two streets in the city of Portsmouth; that he was entirely unfamiliar with the names and locations of the other streets and that he had to depend upon Hyde for directions as to where he should go and over what streets he should drive in order that Hyde might reach the place where he wanted to go; that he did follow Hyde's directions and Hyde told him to drive up in front of a certain house and stop, which he did; that he had no knowledge of the reputation of the house; that he had no knowledge that Hyde intended to purchase

liquor, at this or any other house; that he was not a drinking man himself, and that he did not know that Hyde had bought any liquor; that he did not leave the car after stopping in front of the Foiles home, but remained in the driver's seat behind the wheel until Hyde had returned from the Foiles home and got in the car; that the car had not moved before the officers jumped on the running board and demanded liquor that was purchased in that house; that he was surprised and promptly denied that he had any liquor or that he had any knowledge of any liquor being purchased in that house and that he related the facts to the officers as to how long he had been in the city of Portsmouth and as to how he happened to be in the car at the place where the arrest was made; that he had never been arrested for any offense in his life, save for violating the speed law; that he had never been accused of any offense before in his life; that he had no interest in the liquor purchased by Hyde; that he had no knowledge of the liquor being in the car; that he did not connive or conspire, either directly or indirectly, with the Foiles to get the liquor, and that he was absolutely surprised to know that Hyde had purchased liquor.    That at the hearing of the matter against him in the police court, where the charge of violating the Mapp act had been lodged against him, the police justice dismissed the charge against him, but ordered his car held; that the car in question was his car, owned by him, and that he had given bond to pay all necessary costs so that the car might be returned to him to await the action of the court of Hustings as to the final disposition of the car."

In addition to the above testimony and after the determination of the proceedings (to be read as a part of the record of the case), certificate was admitted by consent of all parties showing the transfer of title to the

automobile in question to Herman W. Jones in the office. of the Secretary of the Commonwealth, as provided by law.

*R. J. Davis* and *G. M. Dillard,* for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General,* and *Lewis H. Machen, Assistant Attorney-General,* for the Commonwealth.

SIMS, P., after making the foregoing statement, delivered the following opinion of the court:

The sole question presented for decision by the assignments of error is the following:

1. Whether it should have appeared to the satisfaction of the court below from the evidence that the owner of the automobile, Herman W. Jones, "was ignorant of the illegal use to which the same was put, and that such illegal use was without his connivance or consent, express or implied?"

The question must be answered in the affirmative.

[1] The illegal use in question consisted of the use of the automobile by the passenger, Hyde, as a means of transportation of the liquor by him. That illegal use is shown by the evidence. Thereupon, under the provisions of the statute, the burden of proof was upon the owner of the automobile to show to the satisfaction of the court that he was ignorant of such illegal use, and that it was without his connivance or consent.

[2] However, this court held, in substance, in *Mason* v. *Commonwealth,* 137 Va. 819, 922-3, 120 S. E. 133, that while, under the provisions of the statute in question, the relief from the forfeiture rests largely in the

discretion of the trial court, such discretion is reviewable, and that, while its exercise ought not to be interfered with on appeal, where the evidence is doubtful and unconvincing, it may be so interfered with "in reasonably clear cases," when the appellate court "is satisfied that injustice has been done."

[3] All of the evidence in the instant case is set forth above and will not be repeated here. We deem it sufficient here to say that it appears to us from the evidence that the owner of the automobile has fully sustained the aforesaid burden of proof imposed upon him by the statute; that the evidence in his behalf is consistent in every particular with itself and with all of the facts and circumstances tended to be shown by the evidence for the Commonwealth; that such evidence is convincing in its character and seems to us to make out a clear case for relief from the forfeiture under the statute; so that we are satisfied from the evidence that injustice has been done by the forfeiture of the automobile.

[4] The general reputation of the home in Portsmouth where the liquor was obtained by Hyde, "as being a place at which liquor could be procured," was, of course, merely a local reputation, of which the owner, a resident of the city of Richmond, could not be inferred to have had any knowledge, especially in view of the uncontradicted testimony of the owner giving his very limited acquaintance with the localities in the city of Portsmouth.

If there had been any conflict or inconsistency anywhere in the testimony, by which the truth of the testimony in behalf of the owner was drawn in question, we would feel that we could not interfere with the decision of the trial court, since that court heard the witnesses testify and had the opportunity to observe their demeanor, respectively, and was thus in a better position

than we could be to deduce the truth from conflicting testimony. But we find no conflict or inconsistency in the testimony which presents any question of credibility or noncredibility of the witnesses.

Moreover, while it may not be so in all cases, where, as in the instant case, the owner of the automobile was himself in actual custody of it and was the driver of it, at the time it was being put to the illegal use by the passenger, Hyde, as a means of transportation of the liquor by him, it inheres in the very nature of the case that if the evidence was insufficient to show the innocence of the owner upon which the statute conditions his right to relief from the forfeiture of the automobile, that very evidence would have been sufficient to have warranted the inference of the guilt, and, hence, would have supported the conviction of the owner of the offense of illegally transporting ardent spirits, or of aiding and assisting the passenger, Hyde, in the commission of such offense. Yet, upon the hearing in the court below, as appears from the record before us, and upon the same evidence, as we must assume from the record, the owner was acquitted of guilt of any such offense, and was plainly rightly so acquitted.

The case must, therefore, be reversed; but precisely what order shall be entered by this court is a question of some difficulty, in view of the situation presented by the record before us. It appears from such record that at the time the petition for the writ of error was presented, to-wit, on August 11, 1923, the automobile had been sold for the benefit of the Commonwealth by the city sergeant under and in accordance with the order of court, which forfeited it; such sale had been reported by him to the court; and the court had entered a further order, on the 15th day of July, 1924, which, after reciting certain proceedings and that said report had been

made by such officer, provided, so far as material, as follows: "* * and it appearing from said report that there is a balance of $393.50 after paying the expenses incident to the sale; and the said balance of $393.50 having been paid into court by the said (city sergeant), it is ordered that the clerk of this court deduct from and pay out of said sum of $393.50 the costs of this proceeding and all other legal charges lying against the said sum, and shall then deposit the balance in the Merchants and Farmers Bank of this city on interest to the credit of this proceeding and subject to the further order of the court; * *." The petition prayed "that a writ of error, without supersedeas," might be awarded. A writ of error, merely, was accordingly granted. The prayer of the petition is merely that the order of the court below which forfeited the automobile may be reviewed and reversed, and that the appellate court enter such judgment as to it shall seem right and proper.

[5] There is no assignment of error touching the proceedings just above mentioned, which preceded the presentation of the petition for the writ of error. The court had jurisdiction to enter the judgment under review. Though erroneous it was not void but valid until reversed. Therefore, not having been superseded, it has been in full force and effect until now. Hence, we know of no relief we can give the owner of the automobile other than to remand the case with direction to the court below to direct the balance, which it ordered to be deposited in bank, by its order of July 15, 1924, aforesaid, to be paid over to the said owner, or to his attorney, if there has been no further order of such court making other disposition thereof. The case will therefore be reversed and such an order will be entered by this court.

[6, 7] In the oral argument before us, some doubt was suggested as to the validity of the concluding provision

of the statute (section 57 above quoted), which is as follows: "* * provided, however, such * * innocent owner shall pay the costs incident to the capture and custody of such automobile * * and the trial of said cause." No authority was cited to sustain such suggestion, nor could be, as we think. It is settled that the legislature has ample power to provide for the forfeiture of property employed in violation of the laws of the State, although the owner thereof has no guilty knowledge whatever that it is being put to such use. *Boggs' Case,* 76 Va. 989, and *Landers v. Commonwealth,* 126 Va. 780, 101 S. E. 778. Therefore, legislation giving relief even to an innocent owner from such forfeiture is purely a matter of grace, and it may attach such provisos or conditions thereto as it may prescribe and they will be valid. Hence, there can be no question but what the proviso of the statute just quoted is perfectly valid, as applied to all cases in which the evidence shows that the property was in fact put to the illegal use for which the statute has declared it shall be forfeited.

*Reversed and remanded.*