# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## LEO N. SEAY v. COMMONWEALTH.

January 17, 1929.

Absent, Chichester, J.

The opinion states the case.

*Percy S. Smith*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General*, for the Commonwealth.

PRENTIS, C. J., delivered the opinion of the court.

Leo N. Seay complains of a judgment finding that his automobile is forfeited to the Commonwealth of Virginia, and directing that it be sold, because at the time it was searched ardent spirits were found therein

which were being illegally transported in violation of section 28 of the prohibition statute, Acts 1926, page 421, chapter 231.

The pertinent and controlling words of that statute are: "When any officer charged with the enforcement of this law shall have reason to believe that ardent spirits are being transported in any wagon, boat, buggy or automobile, or other vehicle, whether of like kind or not, contrary to law, he shall have the right and it shall be his duty to search such * * automobile * * and to seize any and all ardent spirits found therein which are being transported contrary to law. Whenever any ardent spirits which are being illegally transported, or are being transported for an illegal use, shall be seized by an officer of the State of Virginia, he shall also take possession of the * * automobile * * in which such liquor shall be found, and turn the same over to the sheriff of the county, or sergeant of the city in which such seizure shall be made, and such * * automobile * * shall be forfeited to the Commonwealth."

The facts shown are, that there is a ferry from Hopewell to the Charles City side of the river; that Seay's automobile was at the Charles City end of the ferry; that the ardent spirits had been brought there by the ferry boat and unloaded for delivery there to Seay; that part of the liquor had been put in the automobile for the purpose of continuing the transportation by Seay, and that before starting the automobile, it was searched and the liquor found therein seized by the officers. Part of the ardent spirits had been placed in the automobile and the remainder was still on the wharf.

The sole question is whether these facts establish the

crime denounced by the statute, the penalty for which is forfeiture of the vehicle in which upon search the contraband liquor is found.

■■ The petitioner's contention, based upon the language of the statute, is that because of the introductory words of the statute: "When any officer charged with the enforcement of this law shall have any reason to believe that ardent spirits are being transported in any wagon, boat, buggy, automobile," etc., there can be no forfeiture unless the vehicle searched has actually moved while containing such contraband.

A close study of the language used does not justify such a narrow construction. The words just quoted relate primarily, not to the forfeiture, but to the officer's belief. It is the officer's duty to search any automobile in which he "has any reason to believe" that ardent spirits are being so illegally transported. It may be assumed, certainly in most cases, that before an automobile can be searched, it must be at rest, for if in motion the officer would find it difficult to board it for the purpose of search. When the reason exists which justifies the search, *i. e.*, the belief of the officer, it thereupon becomes the right and duty of such officer to search the automobile and if any ardent spirits are found therein which are being transported contrary to law, to seize all of it.

Applying this language to the facts of this case, of course it cannot be questioned that the ardent spirits here referred to had just been illegally transported in a continuous movement across the ferry to Charles City county, then from the ferry boat to the wharf, and were then being transferred from the wharf to the automobile and loaded therein contrary to law. These are the facts which justified the officers in seizing the

liquor, because it was then being so illegally transported. When the search which is authorized by law discloses the contraband liquor in the vehicle, then the statute prescribes the further consequences in this language: "Whenever any ardent spirits which are being illegally transported, or are being transported for an illegal use, shall be seized by an officer of the State of Virginia, he shall also take possession of the * * automobile * * and such * * automobile * * shall be forfeited to the Commonwealth."

The manifest purpose of this statute is to prevent the use of private vehicles in the illegal transportation of intoxicating liquor; and it does no violence to the language used to hold in this case that the essential facts required to justify the forfeiture are apparent. We have (a) the officer's reason to believe that this intoxicating liquor was being transported contrary to law, which belief of the officer, if unfounded, is of little consequence, but we have (b) the additional fact that upon search the belief became a certainty and ardent spirits were found in the suspected automobile, and this discovery imposes serious consequences. The contraband so seized was being illegally transported, the transfer to the automobile being one stage of a continuous transportation, and being found in the automobile which was being used to accomplish the journey, its forfeiture is the consequence.

■■ The only case relied on for the petitioner is *Carey* v. *State*, 206 Ala. 351, 89 So. 609. The language of the Alabama statute permitted the condemnation and forfeiture of automobiles "used in the transportation of intoxicating liquors." A demurrer was sustained to the bill. The facts alleged were that the automobile was near the railway station, and that defendants brought from the train suitcases containing

intoxicating liquor, placed them in the automobile, and that immediately the car and whiskey were seized. A bare majority of the court, because the statute was highly penal, sustained the demurrer, upon the ground that the bill did not allege a conveyance of the intoxicating liquors within the meaning of the Alabama statute. Seven judges sat in the case, three of whom dissented. We think the minority in that case were right, and that the construction of the majority was erroneous. The majority applied the strictest rule of construction, whereas the statute in Virginia (as there) directs a liberal construction. All rules of construction, however, are merely for the purpose of ascertaining the intention expressed, and this is true whether the construction be strict or liberal. In this connection, the judge who wrote the dissenting opinion said: "I am unable to see how one reading the provisions of the act of 1915 (Gen. Acts, 1915, page 8) and those of the act of 1919, (Gen Acts 1919, page 6) for the purpose of suppressing the evils of intemperance (and these acts should be construed in connection one with the other, as held in *State* v. *Merrill*, 203 Ala. 686, 85 So. 28), can seriously doubt that the legislature fully intended that a car in which prohibited liquors had been placed for the purpose of transportation from one point to another in the State, should be subject to condemnation, whether it moved or not. So strict and narrow a construction as here applied was attempted to be avoided by the legislature, as disclosed in section 37, page 8, of the Acts of 1915, wherein it was expressly provided that the provisions thereof should be liberally construed, so as to accomplish the purpose of suppressing the evils of intemperance, and section 19 of the Act of 1919, discloses that this act is supplemental to the act of 1915. The decision in this case has injected a new

issue into the condemnation statute. Had there been one revolution of the wheels of the car, or even the slightest movement, as I understand the majority view, then its condemnation could have been effected. The prohibition laws disclose a purpose on the part of the legislature that there should be much vigilance on the part of the law-enforcing officers, and yet under this decision such officers may see an automobile loaded with prohibited liquors, but must stand by and await its seizure until it begins to move. The condemnation section of the act includes all conveyances and vehicles of any kind, 'whether on the waters of the State, under the water, on land, or in the air.' Should an officer charged with the enforcement of this law see prohibited liquors stored in an aeroplane, under this decision, he is not permitted to seize it for the purpose of condemnation until its movements have begun, at which time it may be safe to say the seizure could scarcely be affected. Like illustrations are applicable as to boats upon the waters of the State.''

We believe that the only pertinent case in which this section has been reviewed by this court is *Edmonson* v. *Commonwealth*, 141 Va. 404, 126 S. E. 54. In that case, the information alleged that the seizure was made on April 20, 1924, and that the automobile had been driven along the public highway on April 19, 1924, while it contained twenty-four and one-half gallons of corn whiskey, which had been then (*i. e.*, on the previous day) carried and transported in the automobile. This court there held that the Virginia statute, without reference to any illegal use to which an automobile may have been put in the past, makes the forfeiture depend upon the officer's finding ardent spirits in it, or upon proof that demonstrates beyond all doubt that ardent spirits were being illegally transported in the automo-

bile immediately prior to its seizure by the officer and; that the forfeiture could not be enforced in that case merely because of past violations of the statute.

In *State* v. *Choroszy*, 122 Maine, 283, 119 Atl. 662, the court having said that an automobile cannot be seized under the Maine statute because the week before it had been used to transport intoxicating liquors unlawfully, also said: "Yet an automobile which has reached the end of its journey, but is not unloaded, that is, its load still remains to be delivered, may still be considered as being used for the transportation of the contraband cargo. This is a question of fact for the jury under proper instructions. It would be a too narrow construction to put upon this statute to say that the moment a vehicle draws up to its final destination it is no longer being used in transportation."

In construing the Federal statute and holding that the evidence in that case did not support the forfeiture, this is said in *United States* v. *Slusser* (D. C.), 270 Fed. 821: "The evidence does not show that any one was discovered in the act of transporting. It is not necessary that the vehicle shall be discovered while actually in motion, but it is necessary that some one be discovered performing some act in furtherance of such transportation, and the government's own evidence shows that no one was caught in such an act at the time the seizure was made."

In construing the Virginia statute, it is of course necessary, in order to enforce the forfeiture, to establish the time of such illegal use of the vehicle, for it cannot be condemned either because there is merely a future purpose to so use it, or because of such illegal use in the past. If, however, the offender is apprehended in the actual commission of the crime, as in loading, unload-

ing, or moving, and his crime is demonstrated by finding the contraband liquor then in the automobile, then the forfeiture may be enforced.

The reasoning of the courts in determining when interstate commerce, or transportation, begins and ends, is, we think, suggestive. That rule has been thus stated:

"The preliminary work performed for the purpose of putting the property in a state of preparation and readiness for transportation, such as carrying the articles in vehicles or floating them to the depot where the interstate journey is to commence, is no part of that journey. But the movement of interstate or foreign commerce begins when the articles have been delivered or tendered to a common carrier for transportation from the State, or for transportation to another carrier for export, though on a local bill of lading, and while in transit from one State to another the goods are exempt from State regulation or taxation." 5 R. C. L., page 706, section 18. *Coe* v. *Errol*, 116 U. S. 517, 6 S. Ct. 475, 29 L. Ed. 715; *Hughes Brothers Timber Co.* v. *Minnesota*, 272 U. S. 469, 47 S. Ct. 170, 71 L. Ed. 359.

There was a unity, a continuity, of illegal transportation of these ardent spirits from Hopewell up to and including the time of the arrest. Loading the liquor in the automobile was a part of that illegal transportation; it was being transported in the automobile, within the meaning of the statute, because the loading was an essential part of the continuing act of illegal transportation. The other construction of the statute here urged, as it seems to us, would be illiberal, meticulous and defeat its manifest purpose. This is not to say that it is impossible to conceive of such contraband merely found in an automobile, but never-

theless not then being illegally transported, though of course the finding of the liquor in an automobile must always be a very strong indication of illegal transportation, because placing it there is essential to and part of the transportation.

In this case, the defendant was caught in the act of illegal transportation, which began at Hopewell, and the automobile was the vehicle then being used for the accomplishment of his purpose. It would be conceded by all, we suppose, that if it were proved that an automobile had been moved, however short the distance, and the arrest should be made while being unloaded immediately at the end of the journey, although the officers did not see the automobile move, a forfeiture would be sustained. It is equally true, as we conclude, that being a part of a continuous illegal transportation by various means, this automobile while being loaded with the contraband for a continuation of that journey was then engaged in transporting ardent spirits contrary to law.

*Affirmed.*