# Richmond.

## ONE CHRYSLER ROADSTER, ENGINE NO. G-136876 AND R. E. STUART V. COMMONWEALTH.

March 21, 1929.

The opinion states the case.

*Carl Budwesky*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorney-Generals* for the Commonwealth.

WEST, J., delivered the opinion of the court.

This is a forfeiture and condemnation proceeding instituted on behalf of the Commonwealth against one Chrysler Roadster, Engine No. G-136876, and R. E. Stuart, its owner. Upon a plea of not guilty on behalf of the Chrysler Roadster and the petition and answer of R. E. Stuart, the jury returned a verdict releasing the automobile. On motion of the Commonwealth, the court set the verdict aside and entered judgment against the Chrysler Roadster, forfeiting the same for

the use of the Commonwealth and dismissing the petition of R. E. Stuart, the owner.

The plaintiffs in error contend that the court erred in—

(1) Refusing and granting instructions; and

(2) Setting aside the verdict and entering judgment for the Commonwealth.

The following instructions were given by the court for' the Commonwealth:

'(a) The court instructs the jury that if they believe from the evidence beyond a reasonable doubt that the automobile in question was at the time of its apprehension, engaged in the illegal transportation of ardent spirits, they shall find said automobile guilty.

"(b) The court further instructs the jury that if any automobile is being used for the purpose of moving ardent spirits from one place to another that the transportation begins when the ardent spirits are loaded into the automobile and ends only when it is removed therefrom.

"The court instructs the jury that the charge against this automobile is that it was used in the transportation of ardent spirits and unless the jury believe that the Commonwealth has proved beyond a reasonable doubt that said automobile was at the time alleged transporting ardent spirits, they must find the automobile not guilty.

"This instruction is to be read in connection with instruction B defining transportation.

"The court instructs the jury that 'to transport' means the act of conveying from one place to another.

"But this instruction is to be read in connection with instruction B."

The defendant requested the court to give instructions 1 to 4 inclusive, as follows:

"(1) The court instructs the jury that the charge against this automobile is that it was used in the transportation of ardent spirits and unless the jury believe that the Commonwealth has proved beyond a reasonable doubt that said automobile was at the time alleged transporting ardent spirits, they must find the automobile not guilty.

"(2) The court instructs the jury that 'to transport' means the act of conveying from one place to another.

"(3) The court instructs the jury that to transport within the meaning of the law, means to convey from one place to another, and the jury must believe that the automobile on trial was actually in motion while liquor was in it before they can find the automobile guilty and forfeit it to the Commonwealth.

"(4) The court instructs the jury that the mere finding of liquor in an automobile is not *prima facie* evidence that the automobile had been used for the illegal purpose of transporting liquor, but the burden is upon the Commonwealth to prove by evidence beyond a reasonable doubt that the automobile had been actually in motion, that is, driven from one place to another, while the said liquor was in it."

The court refused to give instructions 3 and 4 and amended instructions 1 and 2 and gave them in the following form:

"(1) The court instructs the jury that the charge against this automobile is that it was used in the transportation of ardent spirits and unless the jury believe that the Commonwealth has proved beyond a reasonable doubt that said automobile was at the time alleged transporting ardent spirits, they must find the automobile not guilty. This instruction is to be read in connection with instruction 'B' defining transportation.

"(2) The court instructs the jury that 'to transport' means the act of conveying from one place to another, but this instruction is to be read in connection with instruction 'B'."

The court also refused to grant the following instruction offered by the defendant:

"The court instructs the jury that to transport within the meaning of the law means to convey from one place to another, and the jury must believe that the automobile on trial was actually in motion while liquor was in it before they can find the automobile guilty and forfeit it to the Commonwealth.

"The court instructs the jury that the mere finding of liquor in an automobile is not *prima facie* evidence that the automobile has been used for the lilegal purpose of transporting liquor, but the burden is upon the Commonwealth to prove by the evidence beyond a reasonable doubt that the automobile had been actually in motion, that is, driven from one place to another, while said liquor was in it."

The jury having returned a verdict in favor of the Chrysler Roadster, it cannot be said that either of the plaintiffs in error was prejudiced by the court's action in amending, granting, or refusing instructions. We deem it unnecessary, therefore, to discuss these assignments of error in detail. The instructions granted correctly propounded the law.

Section 28 of the Layman Prohibition Law, chapter 407 of Acts 1924, provides: "Whenever any ardent spirits which are being illegally transported, or transported for an illegal use, shall be seized * * * he shall also take possession of the * * * automobile * * * and such automobile * * * shall be forfeited to the Commonwealth * *."

The legislature never intended to put upon the Commonwealth the burden of proving that the automobile was actually in motion while the liquor was in it; it is sufficient to show that the vehicle was being used in the process of transporting the ardent spirits, and transportation begins when the ardent spirits are loaded into the car for illegal transportation and ends only when they are removed therefrom. The loading and unloading are necessarily a part of the transportation.

The plaintiffs in error cite the case of *Carey* v. *State*, 206 Ala. 351, 89 So. 609, to sustain their contention as to what constitutes transportation of ardent spirits within the meaning of the law. That case was decided by a divided court and it is conceded that the majority opinion is not in harmony with the views herein expressed. We think the majority opinion in that case puts too strict a construction on the statute and we decline to follow it. The Virginia statute provides in terms that it shall be liberally construed for the prevention of the sale and use of ardent spirits.

In *Seay* v. *Commonwealth*, decided January 17, 1929, a similar conclusion is stated. *Post*, page 982, 146 S. E. 198.

The second and last assignment of error is based upon the court's action in setting aside the verdict of the jury, and entering judgment for the Commonwealth under section 6251 of the Virginia Code.

There is no merit in the contention that the forfeiture proceeding in the instant case is not a civil action which is embraced in section 6251 of the Code authorizing the court to set aside the verdict of the jury and enter final judgment. The court held in *Landers* v. *Commonwealth*, 126 Va. 780, 101 S. E. 778,

that a confiscation proceeding is a proceeding *in rem*. On page 792 (101 S. E. 782) this language is used: "The procedure is against the vehicle and not against the owner or any other person. It is *in rem* wholly, and not *in personam*."

In *Kirkland* v. *Arkansas*, 72 Ark. 171, 78 S. W. 770, 65 L. R. A. 76, 105 Am. St. Rep. 25, 2 Ann. Cas. 242, the court held that a proceeding to destroy liquor which was unlawfully in a prohibited district was a civil proceeding, and that a preponderance of the evidence was sufficient to sustain the charge.

In *United States* v. *La Vengeance*, 3 Dallas 297, 1 L. Ed. 610, the opinion of the court was delivered by Chief Justice Marshall, who said: "We are unanimously of opinion that it is a civil cause. It is a process of the nature of a libel *in rem;* and does not, in any degree, touch the person of the offender."

In *Anonymous Case*, Fed. Cas. No. 444, 1 Call 23, Mr. Justice Story said: "It is not true that informations *in rem* are criminal proceedings. On the contrary, it has been solemnly adjudged that they are civil proceedings."

It being clear that this proceeding is a civil and not a criminal case, the remaining question to be considered is, did the court commit error in setting aside the verdict of the jury and entering judgment for the Commonwealth? That question must be answered in the negative.

The material facts in the case are these: On the afternoon the Chrysler Roadster was taken possession of by the officers, R. E. Stuart, the owner, drove it to Washington, D. C., to attend a game of baseball. Two of his friends, L. D. Cowhig and J. R. Downey, accompanied him on the trip to Washington and return.

Officer James McDermott saw them at 5:50 P. M., as they came over the Long Bridge from Washington and proceeded along the river road to Alexandria. He 'phoned the Alexandria police headquarters that R. E. Stuart's car, which he suspected of containing liquor, was then on its way to Alexandria. McDermott proceeded at once to Alexandria in his Ford car, and when he passed R. E. Stuart's home on South Washington street, at 6:10 P. M., the Chrysler car was standing in front of his front door. There was no one in the car, so he drove around a few blocks, and when he came back into Washington street the car was being turned around towards the garage in the rear of Stuart's home. McDermott proceeded at once to the police station, and in two or three minutes the officers left for Stuart's home, armed with a search warrant, which was prepared before they arrived. The officers arrived and made the search between 6:20 and 6:30. There was no liquor in his residence, but they found 101 gallons of liquor in the back part of the Chrysler roadster in the garage on Stuart's premises in the rear of his home.

They saw R. E. Stuart and George Stuart, his brother, when the search was made.

George Stuart, brother of R. E. Stuart, testified that he purchased the liquor from a man from Maryland and had it delivered in the garage about four o'clock the same afternoon; that he borrowed the Chrysler car from his brother because the Dodge car, belonging to his father, which he usually drove, had a flat tire; that he loaded the liquor into the Chrysler car for the purpose of taking it to Fairfax county at seven o'clock that afternoon; that R. E. Stuart knew nothing of the liquor and had not moved the car after

the liquor was put in it. R. E. Stuart testified that when he returned from Washington, at the request of George Stuart, he consented that George might use his Chrysler car; that he knew nothing about the liquor and that there had been none in the car up to the time he told his brother he could use it. The officers had received frequent complaints against the Stuart place about violations of the prohibition law. The father of George and R. E. Stuart had been convicted of its violation and George Stuart plead guilty to illegal possession of the whiskey in the instant case.

The officers seized the liquor and the Chrysler car while the liquor was in the car, awaiting transportation, in a few minutes, to Fairfax county. The loading of the car for such transportation was a part of the illegal transportation, just as the unloading of a car, at its point of destination, constitutes a part of the transportation. The forfeiture statute was not intended to apply to past transportation of ardent spirits, but does apply to any present act in furtherance of transportation without which the act of transportation would have been impossible.

In *State* v. *Choroszy*, 122 Me. 283, 119 Atl. 662, the Supreme Court of Maine, in dealing with a case of illegal transportation, says: "It would be a too narrow construction to put upon the statute to say that the moment a vehicle draws up to its final destination it is no longer being used in transportation."

If it were true that the whiskey was not brought to Alexandria in the Chrysler Roadster, but was loaded with the whiskey in the garage for immediate transportation to Fairfax county, still there is no evidence to support the verdict of not guilty.

But R. E. Stuart, in whose garage the whiskey

was loaded into his Chrysler roadster, contends that his car should not be forfeited and confiscated because it was used in the transportation of ardent spirits, without his knowledge, connivance or consent.

Section 4675 (28), Code, 1924, provides in part as follows: "* * * And provided further, that whenever a quantity of ardent spirits is illegally transported in any automobile or vehicle, and it shall appear to the satisfaction of the court from the evidence that the owner or lienor of such * * automobile or other conveyance was ignorant of the use to which the same was put, and that such illegal use was without his connivance or consent, express or implied, * * * then such court shall have the right to relieve such owner * * from the forfeiture herein provided * *."

Complaint was frequently made of violations of the prohibition law by the men of the Stuart family. The father and one son, George, were under sentence for violating this law. R. E. Stuart was under suspicion as a violator of this law. The contraband whiskey, according to the testimony of the defense, was brought to his garage and loaded in his car for immediate delivery to his customers in another county. Every door to the garage, in which the whiskey was said to be placed in his car, except one opening towards the back door of his residence, was locked.

R. E. Stuart consented that George use his car without asking any questions, although he must have known he was a violator of the prohibition law, and wanted the car for the purpose of transporting ardent spirits.

In view of these facts and other incriminating circumstances shown in the evidence, for us to be satisfied that the illegal use of his Chrysler roadster

was without the knowledge, connivance or consent, express or implied, of R. E. Stuart, would strain our "credulity to the breaking point." On the contrary, we are satisfied that he knew the use to which his car was being put.

For the reasons stated the judgment will be affirmed.

*Affirmed.*