# Richmond

Sam D. Patterson, Owner of One Dodge Four-Door Sedan, Motor No. D-22-359151, Virginia License No. 357-278 v. Commonwealth of Virginia.

June 14, 1948.

Record No. 3337.

Present, Gregory, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*L. Gleason Gianniny*, for the plaintiff in error.

*Harvey B. Apperson, Attorney General* and *G. Stanley Clarke, Assistant Attorney General,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

On August 5, 1946, T. P. Duggan, an investigator for the Virginia Alcoholic Beverage Control Board, notified the Commonwealth's Attorney for the city of Richmond, in writing, that he had seized a 1940 Dodge sedan, Motor No. D-22-359151, Virginia License No. 357-278, found to contain eighty-five fifths of "legal whiskey not bearing A. B. C. stamps," and that a warrant had been issued charging Sam D. Patterson with its unlawful transportation.

On August 6, 1946, the Commonwealth's Attorney filed an information alleging the above seizure and charging that the automobile was then and there being unlawfully used to transport alcoholic beverages in violation of chapter 255, section 38-a of an act of the General Assembly of Virginia, 1936, Virginia Code, 1942 (Michie), section 4675 (38a). He prayed that the automobile be condemned and sold, that the proceeds be disposed of according to law, and that Sam D. Patterson be cited to appear and show cause why

the said vehicle should not be condemned and sold to enforce the forfeiture.

Patterson, the owner of the automobile, desiring to regain its possession, requested its appraisement. It was appraised as having a value of $982.00. He then gave a bond, payable to the Commonwealth of Virginia, in the amount of $1,017.00, conditioned according to law, and the automobile was delivered to him. Code, section 4675 (38a) (e).

Patterson thereafter answered the information under oath. For answer, he said, "that he was not a party to, nor did he have any knowledge of any illegal use of said automobile; that he was not the purchaser and owner, nor agent of the owner of any liquors alleged to have been found in said automobile; that he had no knowledge of the alleged violation; that he did not store or transport said liquors, nor authorize, nor allow said storage or transportation," and that upon his trial in the police court of the city of Richmond, upon a charge of illegally transporting the said whiskey, he had been promptly acquitted.

The trial court, sitting by consent without a jury, after a. hearing upon the information, answer and evidence, ordered that the Commonwealth have execution against Patterson "in the amount of $1,017.00, being the amount of the appraised value of the Dodge automobile of $982.00 and costs of $35.00." From this judgment Patterson appealed.

The sole assignment of error is that the evidence was insufficient to justify the forfeiture of the automobile.

The plaintiff in error contends specifically, first, that there was no evidence that the automobile had transported the liquor found in it; and, second, that even if there had been such an unlawful transportation, it was fully shown that he was ignorant of such unlawful use, and that such unlawful use was without his connivance or consent, express or implied.

The evidence is certified to us in narrative form, and may be briefly summarized thus:

Thomas P. Duggan testified that on August 3, 1946,

he received information that the automobile in question was parked in Hazell's Service Station, at Belvidere and Cary streets, in the city of Richmond, and contained alcoholic liquor in excess of the amount which could be lawfully transported without a permit; that he and C. W. Saunders, Jr., chief enforcement officer of the Virginia Alcoholic Beverage Control Board, went to the above station; that he procured a search warrant for the automobile and demanded its keys from William L. Hazell, Jr., owner and attendant of the service station; that when his demand was refused, Hazell was shown the warrant and told of the intention of the officers to break the trunk lock, if the keys were not made available; that thereupon the keys were removed from a hook inside the station and given to him; that he then opened the automobile trunk and found eighty-four fifths of whiskey, bearing proper Federal stamps and a Washington, D. C., retailer's stamp, but without the stamps of the Virginia A. B. C. Board; that there was an additional fifth of a like brand of whiskey in the glove compartment of the automobile; that he removed the automobile and its contents to a police station, leaving word for Sam D. Patterson to surrender himself at that station; that at no time did he see the automobile in motion before searching it; and that he did not know who had possession of the car or who brought it into the station or how long it had been parked there.

Clyde W. Saunders, Jr., his companion officer, said that he could add nothing to the above statement.

Sam D. Patterson testified that he drove his automobile to the above service station between 11:30 a. m. and 12:30 p. m., for the purpose of having it washed and greased; that he gave the keys to his automobile to the station attendant, who hung them on a rack especially provided therefor; that he had another automobile which had been serviced there and he drove that car away, taking a companion to the latter's home; that he then went home and between 3:00 and 3:30 p. m. was notified by telephone that his automobile had been seized; that he went immedi-

ately to the police station, and was there informed of the facts stated in Duggan's testimony; whereupon, he instantly denied all knowledge of the presence, ownership, control or possession of said liquor; that, however, he was arrested and charged with storing and transporting liquor; and that upon the hearing of said charges he was promptly acquitted.

Patterson further said that he often left one of his cars at the service station to be serviced while he drove another; that sometimes a car remained there two or three days; that so far as he knew no one had driven his Dodge automobile and he had not authorized or permitted any one to use it; that no one possessed a key to his automobile except himself; that he had not returned to the service station nor sent any one there after he parked the automobile; that he did not know how or by whom the liquor was placed in his automobile; that it was not in the car when he drove it to the filling station; and that he did not himself nor did any one, at his instance, put the liquor in the car.

William L. Hazell, Jr. said he clarly remembered that Patterson brought the car into his station to be washed and greased; that he placed its keys on the key rack and proceeded with his work; that as far as he knew the keys had not been removed, but he could not say by whom or when they might have been removed; that he had several men working for him in and about the parking lot with access to the office and he was not present during the entire time the car was there; and that he personally did not store the liquor, see it stored, or know who might have stored it. He verified Patterson's statement that he often left an automobile there for as long as two days.

Virginia Code, 1942, (Michie), section 4675 (50) prohibits the possession and transportation of alcoholic beverages illegally acquired. It is therein provided that, "Alcoholic beverages in the possession of any person in amounts in excess of one gallon, in containers not bearing stamps or other evidence showing the same to have been purchased from the Board or a person licensed to sell the same under

the provisions of this act or other evidence that the tax due to the Commonwealth of Virginia or the markup required by Virginia Alcoholic Beverage Control Board has been paid, shall be deemed for the purposes of this act to have been illegally acquired."

The liquor seized in this case was in excess of one gallon and none of it bore stamps of the Virginia Alcoholic Beverage Control Board. There was no permit issued for its legal transportation under Code, section 4675 (49a). Thus it was unlawful either to possess the illegally acquired liquor or transport it.

This proceeding was instituted under provisions of Code, section 4675 (38a). The title to this section reads as follows:

"Search of vehicles in which illegally acquired alcoholic beverages are being transported; or in which alcoholic beverages are being illegally transported; disposition of alcoholic beverages; arrest."

Subsection (a) of section 4675 (38a) authorizes seizure of a vehicle where any officer charged with enforcement of the alcoholic beverage laws of this State shall have reason to believe that the vehicle is engaged in transporting either alcoholic beverages illegally acquired, or is engaged in illegally transporting alcoholic beverages.

Such seized vehicle is subject to confiscation, with the proviso that the owner or lienor may intervene and become a party to the proceedings, (subsection (f) of section 4675 (38a) ), and if the owner-claimant can satisfy the court that he was ignorant of the illegal use of his automobile and that such illegal use was without his connivance or consent, express or implied, the vehicle shall be relieved from forfeiture and restored to him. (Subsection (h) of section 4675 (38a) ).

When we analyze the evidence in this case, we find that all it shows is that liquor, illegally acquired, was found in the car. The Commonwealth's witnesses say that they did not see the vehicle in motion before they seized it. There is no evidence as to how the liquor got in the car, when or where

it was put there, or by whom. There is no evidence that any one moved the car or made any preparation to move it after the liquor had been placed therein. The car was seized with its contents before the owner or owners appeared.

The owner of the car denied all connection with the whiskey and its transportation. He testified that it was not in the car when he left it at the service station; that he did not own the liquor; that he did not authorize any one to place it in the car, and did not know it was in it, or when it was put in it; and that if the car was illegally used, he was ignorant of such use and the illegal use was without his connivance or consent, express or implied.

The only evidence as to the origin of the whiskey is that it bore Washington, D. C., retailer's stamps. By whom it was originally purchased in Washington, by whom or by what means transported to Richmond, Virginia, or by whom placed in the seized automobile, we are not told by the evidence.

The lack of evidence opens a wide field of speculation. Was the liquor purchased by some person in Washington, transported to Richmond and placed in the parked car, or sold to another in Richmond, who carried it to the service station and placed it in the car? How did the informer of Duggan know that the liquor was in the car? Did the informer get his knowledge of its presence by seeing it transferred to the Dodge? Did some person, who had access to the keys of the car, put it in the trunk of the car for future transportation, or for temporary storage, with the intention of removing it thereafter if opportunity presented itself, with the knowledge that the car would likely remain parked for an undetermined time?

In support of his contention that the evidence showed a transportation of the whiskey, the Attorney General relies upon the cases of *One Chrysler Roadster* v. *Commonwealth*, 152 Va. 508, 147 S. E. 243; and *Seay* v. *Commonwealth*, 152 Va. 982, 146 S. E. 198, 61 A. L. R. 997, decided under a former and more drastic prohibition act (Acts 1924, chapter

407, page 593, as amended by Acts 1926, chapter 231, page 417). On the facts, the two cases are readily distinguished from the one now before us.

In the *Chrysler Case, supra,* the whiskey was seized in the owner's garage shortly after the liquor had been loaded therein. A brother of the owner testified that the liquor was his; that he borrowed the car from his brother; and that he loaded the liquor into it for the purpose of taking it to an adjacent county for delivery. The evidence disclosed that the owner knew that the car was being used for the purpose of transporting ardent spirits, and that the liquor was in it awaiting transportation in a few minutes.

In the *Seay Case, supra,* ardent spirits had been brought by a ferry from Hopewell to the Charles City side of the river for delivery to Seay, and a part of the liquor had been put in the automobile of Seay "for the purpose of continuing the transportation" by Seay.

In both of the cited cases, it was held that the evidence showed a continuity of illegal transportation; the loading of the cars constituting a part of such transportation.

In the case now before us, there was no evidence that the liquor was placed in the car for transportation and none of an intention on the part of any person to move the vehicle with the knowledge that it contained a cargo of liquor.

In this connection see *Newman* v. *Commonwealth, ante,* p. 803, 48 S. E. (2d) 355, a criminal proceeding, wherein the owner of a motor truck was charged with transportation of alcoholic beverages in a quantity in excess of one gallon without the required permit. Virginia Code, 1942, (Michie), section 4675 (49a).

In our view of the present case, it is unnecessary to decide whether the Dodge car transported the liquor. Though the car had been so used, the owner was entitled to have it relieved from forfeiture if he was innocent of such unlawful use.

The statute puts upon the claimant the burden of satisfying the court that he was ignorant of the illegal use of his car, and that such use was without his connivance or consent, express or implied. But this does not mean that

perfect or complete proof of innocence is required. The degree to which the proof ought to satisfy the court need be reasonable only. Mere possibilities or mere speculation are not to be allowed to overcome uncontradicted evidence of actual facts. A conviction of bad faith on the part of the claimant should be based upon some evidence of his criminal knowledge, consent or connivance to the unlawful use of his vehicle, or upon circumstances from which there may be fairly inferred such knowledge or consent. *Mason* v. *Commonwealth*, 137 Va. 819, 120 S. E. 133; *Jones* v. *Commonwealth*, 141 Va. 459, 126 S. E. 238.

There is no conflict in the evidence in this case. The testimony of the owner of the car is without dispute. It is not inconsistent with the facts and circumstances shown by the witnesses of the Commonwealth. There is no conflict or inconsistency in his own testimony, which presents any question of credibility or noncredibility. There was no evidence from which it could be reasonably inferred. that he was actively or passively engaged in violating the Virginia Alcoholic Beverage Control Act. There was nothing in his statements or in the statements of any other witness to his discredit. The truth of his testimony was not drawn in question by the testimony of any other witness, and outside of a suspected personal interest and motive there was nothing which tended to raise a doubt as to his truthfulness.

No significance can be placed on the facts that the trunk of the car was locked and the keys of the car were left with the service station attendant. Ordinary rules for the protection of property require that trunks of cars be locked and that trunk and ignition keys not be left in a parked car.

In *Pardue* v. *Commonwealth*, 183 Va. 277, 32 S. E. (2d) 77, a prosecution for unlawful possession of intoxicating liquor, under Code, section 4675 (50), we held that where the testimony of the defendant in no wise conflicts with the testimony of the Commonwealth and is not contradicted directly or indirectly, the testimony of the defendant must be accepted as true.

As to the effect to be given uncontradicted and unimpeached testimony of an interested witness, see *Chesapeake, etc., Ry. Co.* v. *Martin*, 283 U. S. 209, 51 S. Ct. 453, 75 L. Ed. 983.

■ The acquittal of Patterson of the charge of illegally transporting liquor and of aiding and assisting in its transportation, upon his trial in another court, while not decisive of his guilt or innocence in this case, at least lends support to a conclusion of his innocence.

Upon the facts and circumstances it appears to us that the claimant has fully sustained the burden of proof imposed upon him. For that reason, the judgment complained of is reversed and the proceeding dismissed.

*Reversed and dismissed.*