# Richmond

KATHERINE CLEEK v. COMMONWEALTH OF VIRGINIA.

March 7, 1949.

Record No. 3426.

Present, All the Justices.

The opinion states the case.

*Coleman & Coleman* and *Bandy & Bandy*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General*, and *G. Stanley Clarke, Assistant Attorney General*, for the Commonwealth.

Hudgins, C. J., delivered the opinion of the court.

On July 22, 1947, W. S. Boyd, of the State police force, seized a certain Ford coupe, bearing a Tennessee license, and found sixty gallons of whiskey being illegally transported therein. The necessary legal steps prescribed by section 38

of the Alcoholic Beverage Control Act (Acts 1934, p. 100), to have the coupe forfeited to the Commonwealth, were taken. Katherine Cleek became a party to the proceedings as provided by section 38a of the Acts of 1936, page 429, amending the Alcoholic Beverage Control Act, Michie's 1942 Code, sec. 4675 (38a). She alleged that she was the owner of the coupe and that if it was being used at the time of the seizure in the illegal transportation of alcoholic beverages it was without her knowledge, connivance or consent, express or implied; and that she had perfected her title to the car on April 18, 1947. The issues were submitted to the trial judge, without the intervention of a jury, who on the hearing, entered an order forfeiting the car to the Commonwealth.

The dominant issue is whether the coupe was used in the illegal transportation of alcoholic beverages with the owner's knowledge or consent, express or implied.

There is no substantial conflict in the testimony. On the night of July 22, 1947, W. S. Boyd, of the State police force, and J. S. Doyle, deputy sheriff of Lee county, were on duty patrolling a highway in Lee county when they became suspicious of two automobiles which passed them. Boyd increased the speed of his car, blew his siren and attempted to overtake the two cars. Though driving between ninety and one hundred miles an hour, he was unable to do so for some distance. The front car, which was afterwards ascertained to be the Ford coupe, suddenly stopped, and its two occupants jumped out and ran. The officers gave chase and shot several times at the fleeing parties. They were unable to apprehend or identify them. Indeed, the officers testified that they could not tell whether they were men or women. A search of the Ford coupe revealed that twenty cases, or sixty gallons, of whiskey were being transported. The coupe and the whiskey were seized, and proceedings for condemnation of the former were instituted.

It appears that the coupe had been originally designed for a four-passenger car, but that the rear seats had been removed, thus creating a large compartment where the whiskey

was packed for transportation. The car was equipped with large spark plugs, commonly known as "hot heads," and two carburetors, designed for the purpose of increasing the maximum speed; the switch key found in the automobile bore a Ford stamp. The officers testified that this key could only be used in an automobile for which it was designed and could not be changed or altered to make it fit another automobile.

The testimony of Katherine Cleek, the claimant, is not denied, and may be summarized as follows: She lives in Kingsport, Tennessee. On the 18th day of April, 1947, she paid $1,100 to the Morelock Motors, of Kingsport, Tennessee, as the purchase price for the Ford coupe. She needed a car and as good cars were scarce and hard to find she took the car, notwithstanding the fact that the rear seats had been removed and the car was equipped with large spark plugs and two carburetors; she was not interested in high speed, but in acquiring a car in good running condition. In March, 1947, she separated from her husband and instituted a divorce suit against him. In the property settlement, pending the outcome of the divorce, she received certain real estate, the proceeds from the sale of which she used to purchase this coupe. Sometime in August, 1947, she and her husband became reconciled and the divorce proceedings were dismissed at her request.

On June 7, 1947, Katherine Cleek was admitted to St. Alban's Hospital, Radford, Virginia, as a patient, and there remained until August 2, 1947. When she left her home in Kingsport to enter the hospital, she locked her coupe and stored it in her own garage, which was in the course of construction and not locked, taking with her the only key to the coupe which she had, and which she kept in her possession while in the hospital. She gave no one permission or authority to use the car in her absence. She did not know who unlocked the car and took it out of the garage or that it was being used at all at the time it was seized.

The Commonwealth, being unable to prove by direct evidence, that the coupe was being used with the consent of

the owner, over her objection, introduced evidence, from which it is claimed that her consent might be implied. The substance of this evidence is, that John R. Cleek, husband of the claimant, bore a bad reputation for "illegal traffic in alcoholic beverages." Two of the witnesses stated he was a "notorious bootlegger," "the worst in this section" of the State. He had been convicted in Scott county, Virginia, several times for such illegal traffic. He lived in Kingsport, Tennessee, and owned a restaurant, filling station, garage and cabins, known as "Green Pines," located in or near Gate City, Scott county, Virginia. Since 1946, Green Pines had been rented to and operated by Bill Cleek, a brother of John R. Cleek.

The foregoing evidence would have been relevant and entitled to due consideration only in the event that the Commonwealth had established that the coupe at the time it was seized was being operated by John R. Cleek, or his agent or employee. The evidence does not connect John R. Cleek with the case in any manner. It does not tend to prove that he had ever driven the car with or without his wife's consent. It simply establishes the fact that he was the husband of the owner of the car at the time it was seized, but was not living with her at that time and was a defendant in a divorce proceeding instituted by her.

There is a sharp distinction between the evidence to which objection was made in this case and the evidence introduced without objection, in *Chrysler Roadster* v. *Commonwealth*, 152 Va. 508, 147 S. E. 243. In that case, R. E. Stuart testified that he loaned his Chrysler roadster to his brother, George Stuart, but at the time he did not know, or have any cause to believe, that George Stuart would use the car in the illegal transportation of alcoholic beverages. The Commonwealth proved that within thirty minutes prior to the seizure of the roadster, R. E. Stuart was seen to be driving it from Washington to his home in Alexandria where he parked the car on the street. Ten minutes thereafter, the car was seized in the rear of the Stuart home, with 101 gallons of alcoholic beverages loaded thereon. Under these circumstances, the

trial court properly admitted the testimony tending to show that the reputation of both George Stuart and his brother, R. E. Stuart, for illicit traffic in intoxicating liquors was bad. This testimony was pertinent as tending to show that R. E. Stuart knew, or should have known, that very probably his brother would use the car in such illegal transportation. The facts of the case now under consideration do not bring it within the influence of this decision.

The only other pertinent testimony introduced by the Commonwealth was that two witnesses testified that Katherine Cleek bore a "bad reputation" in Scott county, but whether such bad reputation referred to truth, veracity or illegal traffic in alcoholic beverages was not stated. One witness, the chief of police of Kingsport, testified that he lived on the same street with her and that she bore a bad reputation for illegal traffic in alcoholic beverages, but that she had never been convicted either in Virginia or Tennessee of the violation of any law except a minor infraction of the traffic laws.

The police officer of Kingsport stated that Katherine Cleek did not report to him, or his office, the fact that her car had been stolen. She did report to Upchurch, a constable in Kingsport, that her car was missing. He informed her that he understood that the car was in Virginia and held by Virginia officers. She investigated and found this to be true and immediately took the proper steps to get possession of her property.

The statutes, Code sections 4675 (38), (38a), authorizing the confiscation of vehicles used in the illegal transportation of alcoholic beverages, and permitting innocent owners to have such vehicles relieved from forfeiture and restored to them, are not quite so stringent as were similar provisions under the Layman Act (Chapter 407 of the Acts of 1924, Pollard's Code Biennial, p. 486). The Layman statute provided that if it appeared to the satisfaction of the court that the owner of the seized vehicle was ignorant of its illegal use and that such use was without his connivance or consent, express or implied "then such court *shall have the right*

to relieve such owner * * * from forfeiture * * * , provided, however, * * * such owner *shall pay the costs* incident to the capture and custody of such automobile or other vehicle and to the trial of said cause." (Sec. 28 of the Layman Act.)

In *Mason* v. *Commonwealth*, 137 Va. 819, 120 S. E. 133, the trial court held that the burden was on the claimant to *completely* satisfy the mind of the court that he made the claim to the vehicle in good faith and that he was ignorant of the illegal use, and that such illegal use was without his connivance or consent. This court held that such a construction of the language of the statute was too rigid, and said:

"For the word 'completely' we would prefer to use the word 'reasonably' as defining the degree to which the proof ought to satisfy the mind of the court as a condition precedent to relief against the forfeiture. But we quite agree that such relief rests largely in the discretion of the trial court, and is only to be granted in reasonably clear cases and not upon doubtful and unconvincing evidence. Such discretion is reviewable, but ought not to be interfered with on appeal unless the appellate court is satisfied that injustice has been done." *Jones* v. *Commonwealth*, 141 Va. 459, 126 S. E. 238; *Chrysler Roadster* v. *Commonwealth*, 152 Va. 508, 147 S. E. 243.

Chapter 255, section 38a, (h) of the Acts of 1936, Michie's 1942 Code, sec. 4675 (38a), (h), provides:

" * * * if it shall appear to the satisfaction of the court that such claimant * * * was the actual bona fide owner of said * * * vehicle at the time of the seizure, that he was ignorant of such illegal use thereof, and that such illegal use was without his connivance or consent, express or implied, * * * the court shall relieve said * * * vehicle from forfeiture and restore it to its innocent owner, and the *costs of the proceedings shall be paid* by the Commonwealth as now provided by law." (Emphasis added.)

The section further provides that if it is shown to the satisfaction of the court that the seized vehicle was stolen

from the person in possession "relief shall be granted the owner" and the costs paid by the Commonwealth.

Under the Layman Act the trial court was "given the right to relieve from forfeiture" but the costs of the proceeding were charged to the innocent owner. If, under the present statute, the owner carries the burden imposed, then the court "shall relieve" such seized vehicle from forfeiture and the costs *shall be paid by the Commonwealth* and not by the innocent owner.

The less stringent terms of the present statute were recognized by this Court in *Patterson* v. *Commonwealth*, 187 Va. 913, 48 S. E. (2d) 357, wherein Mr. Justice Spratley, at page 920, said:

"The statute puts upon the claimant the burden of satisfying the court that he was ignorant of the illegal use of his car, and that such use was without his connivance or consent, express or implied. But this does not mean that perfect or complete proof of innocence is required. The degree to which the proof ought to satisfy the court need be reasonable only. Mere possibilities or mere speculation are not to be allowed to overcome uncontradicted evidence of actual facts. A conviction of bad faith on the part of the claimant should be based upon some evidence of his criminal knowledge, consent or connivance to the unlawful use of his vehicle, or upon circumstances from which there may be fairly inferred such knowledge or consent."

The owner of the seized coupe has clearly borne the burden imposed upon her by statute, by proving (1) that she was the registered title owner of the vehicle, and filed her title papers showing that she purchased the car on April 18, 1947; (2) she not only testified, but filed her hospital bills showing, that she entered the hospital as a patient on June 7th and was discharged on August 2nd—that is, she entered the hospital as a patient more than thirty days before the car was seized and remained there for eleven days after it was seized; (3) that during the time she was in the hospital she kept in her possession the only key she had to the coupe; and (4) that she left the car locked in her own garage in

Kingsport, Tennessee, and did not authorize any one to use it during her absence.

The mere fact that several witnesses testified that Katherine Cleek bore a bad reputation is not sufficient to overcome the undisputed, positive testimony tending to show that her car was being used in the illegal transportation of alcoholic beverages without her knowledge, consent or connivance. Any other conclusion would be based upon mere conjecture and not upon any substantial proven fact.

The owner is entitled to final judgment in this court.

*Reversed and final judgment.*