# Richmond

## T. R. BANDY v. COMMONWEALTH OF VIRGINIA.

January 13, 1947.

Record No. 3140.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Bandy & Bandy*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *G. Stanley Clarke, Assistant Attorney General*, for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

This case originated in an information filed August 8, 1945, in the Circuit Court of Botetourt county, Virginia, under Virginia Code, 1942 (Michie), section 4675 (38a), Acts of 1936, page 429, for the forfeiture of a Buick five-passenger coupe automobile. On July 31, 1945, the date of

its seizure, the automobile was being driven and operated in Botetourt county by Burton B. Laughters, its owner. It then contained seventeen cases of bottled whiskey, 380 bottles, a quantity largely in excess of one gallon. The whiskey had been purchased in Washington, D. C., and had been transported therefrom in violation of regulations adopted by the Virginia Alcoholic Beverage Control Board, pursuant to chapter 184A, Virginia Code, 1942 (Michie), section 4675 (1) *et seq.*

Laughters was arrested, and subsequently tried and convicted in the trial justice court. He was given a fine and jail sentence, the jail sentence being suspended on condition that he be not caught again transporting liquor in that county. This forfeiture proceeding against the car followed.

On August 8, 1945, the sheriff of Botetourt county appraised the fair cash value of the automobile at $1200, and returned his report to the clerk's office. Thereupon, on the same day, Laughters executed a bond in the sum of $1250, payable to the Commonwealth of Virginia, conditioned according to law, and deposited $1250, in cash, with the clerk of the court as surety for the faithful performance of his bond. The possession of the automobile was thereupon delivered to Laughters.

Thereafter, on November 2, 1945, Laughters and T. R. Bandy filed their joint and separate answers to the information, denying its allegations, and asserting that T. R. Bandy had a valid lien upon the automobile in the sum of $1800, and further averring that Bandy had not expressly or impliedly connived at or consented to the use of the automobile in the illegal transportation of whiskey; that the lien of Bandy was equal to or more than the value of the automobile; and that the automobile should be delivered to the said lienor, and the costs of the proceeding paid by the Commonwealth.

The case was heard before the judge of the Circuit Court of Botetourt county without the intervention of a jury, trial by jury having been waived. The learned trial judge filed with the record his written opinion. After reviewing

the evidence, he concluded that Bandy knew, at the time of its seizure, that the automobile was being illegally used. He was further of opinion that Bandy had no interest in the proceedings, nor right to complain of the forfeiture, on the grounds that the execution of the bond released the vehicle, and that, under the statute, its subsequent forfeiture forfeited the bond and not the vehicle.

On December 6, judgment was accordingly entered "completely" forfeiting the automobile to the Commonwealth of Virginia, and directing that it be confiscated and sold. Proceeding further, the judgment order recited the execution and delivery of the bond for the release of the automobile, and then gave final judgment against Laughters in the sum of $1250, "the judgment to be discharged by the cash sum of $1250, which Burton B. Laughters placed with the clerk of this court," covering the appraised value of the automobile and the cost of the proceeding.

The judgment order also recited the conclusion of the court that Bandy had no interest in the proceeding because "his alleged lien, if any, follows the vehicle and may now be enforced against the said vehicle if he is so advised, and the said lienor is therefore not damaged by a forfeiture of the bond as herein ordered."

From this judgment Bandy has appealed. Laughters has not sought an appeal in this case, nor from his conviction in the trial justice court.

Bandy contends that the court erred in holding that he was not ignorant of the fact that the Buick automobile was being used for illegal purposes when it was seized, and in declaring that he must assert his lien, if any, against the automobile.

It is clear that the owner of the automobile was guilty of possessing and transporting illegal ardent spirits in violation of "The Alcoholic Beverage Control Act" of Virginia.

Bandy is a practicing attorney in Kingsport, Tennessee, and county judge of Sullivan county, in that State. Laughters is a resident of the same community, having lived in or near Kingsport for five years.

Bandy testified that he had known Laughters only since August, 1944; that on October 9, 1944, he loaned Laughters $2600 on the Buick automobile here involved and a Ford coupe, the money being delivered in cash; that on that day a note in the above amount, and a chattel trust deed, covering the two cars and securing the note, both exhibited in evidence, were executed by Laughters, the chattel trust deed being duly recorded under the laws of Tennessee; that at that time Laughters was engaged in the garage business in Kingsport; that before making the loan he made inquiry of the Retail Merchants Association as to Laughters' credit record and also inquired of the local police justice and the clerk of the circuit court whether he was connected with the illegal liquor traffic; that being informed that Laughters' credit was good, and that there was no record of his engagement in the liquor traffic, he loaned the money; that he did not, expressly or impliedly, consent or connive with Laughters in the transportation of whiskey; that he did not know, either at the time of the loan or at the time of the seizure of the car that he was engaged in such traffic; that the Ford car was subsequently sold by Laughters for $800, and that amount applied towards reduction of the loan, leaving a balance of $1800 on the Buick; and that the amount loaned may have been in excess of the O. P. A. ceiling prices for the two cars.

In November, 1944, shortly after the loan was made, Bandy was employed by Laughters as an attorney to represent him in a case in a Federal court in Kentucky, in which Laughters was summoned as a witness. That case involved the trial of a man indicted for violating the regulations of the O. P. A. in the sale and purchase of alcoholic beverages. At the conclusion of that trial, Laughters was indicted for perjury, and upon his subsequent trial therefor, he was represented by Bandy. He was convicted of perjury, and his appeal was, at the time of the trial of this proceeding in the lower court, pending in the United States Circuit Court of Appeals for the Fifth Circuit.

Laughters' testimony is to the same effect as that of Bandy

with reference to the loan, and as to Bandy's lack of knowledge that Laughters was engaged in the whiskey business. Laughters, however, said that prior to going in the garage business near Kingsport, he had been engaged in the liquor traffic in that community, dealing with large quantities, and that after being in the garage business for one year, he abandoned that business in February, 1945, and again began handling liquor. He admitted that at the time of the trial of the case in Kentucky, in which he was a witness, he was engaged in buying and selling whiskey.

When Laughters was arrested on July 31, he told one of the officers that there was easy money in the liquor business and the officer was a fool not to engage in it himself. He then had on his person $3,000, and his wife, who was driving a pilot car, ahead of the Buick, had a large sum with her. After his arrest, Mrs. Laughters immediately called Bandy by telephone, and asked him to come to Botetourt county, bringing with him the papers showing his lien on the Buick automobile. Bandy met Laughters' wife in a hotel in the city of Roanoke, Virginia, the next day. Seven days later the Buick car was released to Laughters, upon his execution of a bond for the amount of the appraised value and costs.

Henry Lane, an inspector for the Virginia Alcoholic Beverage Board, testified that his territory included Scott county, Virginia, which is about three to five miles from Kingsport, Tennessee; that he had worked that territory regularly for eight years, and that a large number of bootleggers of Kingsport were known to him personally. Asked if he knew the reputation of Laughters in that vicinity, he replied:

"Yes, sir, from the officers and from attorneys and the public in general it is common knowledge that he has been in whiskey business for a number of years, one of the big shots in the liquor business."

Lane further said that Laughters bore the general reputation of being a bootlegger in October, 1944.

L. W. Howerton, an investigator of the enforcement division of the Virginia Alcoholic Beverage Control Board, stated that he had investigated the general reputation of Laughters

as a violator of the liquor laws in the community of Kingsport, and talked to a number of people, and found out that he had the general reputation of being "one of the biggest operators in that section of the country." He also testified that after Laughters was convicted in the trial justice court, a discussion arose between the attorneys present as to what would happen if Laughters was caught again in Botetourt county, and Bandy said, "What difference does that make? He can go into Washington or Maryland without going through Botetourt County. * * * Judge Bandy stated at the time was not there some other road Laughters could travel en route from Washington or the northern states to Kingsport and Johnson City and Carter says, 'Oh, yes, there are several roads he can get there,' and he, Bandy, says, 'He will have to go over some of them; that is his living, he has to make it, he can't stop like that; he will have to dodge Botetourt County.'"

G. W. Colton, an investigator for the Virginia Alcoholic Beverage Control Board, corroborated Howerton as to the above statements by Bandy. Bandy contradicted them, attributing the statements to an attorney from Tennessee, present during the discussion.

Virginia Code, 1942 (Michie), section 4675 (38a) provides for the search, seizure, and disposition of vehicles engaged in the illegal transportation of alcoholic beverages and proceedings therefor. The statute deals with many contingencies that may arise in connection therewith; but we are here concerned only with two of its subdivisions.

Subsection (e) of section 4675 (38a) deals with the surrender of a seized vehicle to the owner or lienor when, prior to a hearing on the information, a bond is given for the release of the seized vehicle. Under it, either the owner or lienor may obtain possession of the vehicle pending the determination of the proceeding. The bond is required to be made payable to the Commonwealth of Virginia, and conditioned, in part, "to the effect that, *if upon the hearing on the information, the judgment of the court be that said property, * * * , be forfeited, judgment may thereupon be*

*entered against the obligors on said bond for the penalty thereof*, without further or other proceedings against them thereon, to be discharged by the payment of the appraised value of the property so seized and forfeited and costs, * * * ." (Italics supplied.) When such a bond is given, the car is released to the owner or lienor giving the bond. If a forfeiture is ordered, the judgment of the court is directed against the obligors of the bond.

In this case, the owner gave the bond conditioned according to the statute, and the vehicle was delivered to the owner. In consequence whereof, the bond was held in substitution of the *res*.

Subsection (i) of section 4675 (38a) deals with the rights of claimants of liens on seized vehicles. The pertinent part of that subsection reads as follows:

"If any such claimant be a lienor, and *if it shall appear to the satisfaction of the court* that the owner of the conveyance or vehicle has perfected his title to the conveyance or vehicle if it be a motor vehicle, prior to its seizure, or within ten days from the time same was acquired, *and that such lienor was ignorant of the fact that such conveyance or vehicle was being used for illegal purposes, when it was so seized, that such illegal use was without such lienor's connivance or consent, express or implied*, and that he held a *bona fide* lien on said property and had perfected the same in the manner prescribed by law, prior to such seizure * * * , the court shall, by an order entered of record establish said lien, upon satisfactory proof of the amount thereof; * * * ." (Italics supplied.)

The language of this subsection is highly significant. The lien can be established only *"if it shall appear to the satisfaction of the court,"* that the *"lienor was ignorant of the fact that such conveyance or vehicle was being used for illegal purposes, when it was so seized, that such illegal use was without such lienor's connivance or consent, express or implied,* * * * ."* It is not required that it be shown that the lienor knew of the use to be made of the vehicle at the time the lien was created. Before a lien can be established

against the interest of the Commonwealth, in the seized vehicle, the lien claimant must show that he was ignorant of its illegal use when it was so seized.

█ "The burden of proof is upon the claimant. Forfeiture is the rule and release therefrom is the exception." *Myown Develop. Corp.* v. *Commonwealth*, 159 Va. 1004, 167 S. E. 374, 124 A. L. R. 312 (note).

█ The trial court has found that the lien claimant has not successfully carried the required burden of proof. Its judgment can "not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Virginia Code, 1942 (Michie), section 6363.

In *Davis* v. *Commonwealth*, 132 Va. 525, 110 S. E. 252, quoting from *Dean* v. *Commonwealth*, 32 Gratt. (73 Va.) 912, 917, we said:

█ " 'Where the evidence consists of circumstances and presumptions, a new trial will not be granted merely because the court, if upon the jury, would have given a different verdict. To warrant a new trial in such cases the evidence should be plainly insufficient to warrant the finding of the jury. This restriction applies *a fortiori* to an appellate court. For, in the appellate court, there is superadded to the weight which must be given to the verdict of a jury fairly rendered, that of the opinion of the judge who presided at the trial, which is always entitled to peculiar respect upon the question of a new trial.

" 'A new trial asked on the ground that the verdict is contrary to the evidence ought to be granted only in a case of plain deviation from right and justice. And this court will set aside a verdict on such a motion only in a case where the jury have plainly decided against the evidence, or without evidence. *Blosser* v. *Harshbarger*, 21 Gratt. (62 Va.) 214, and cases there cited.' *Cluverius* v. *Commonwealth*, 81 Va. 787, 816.

"The rule is now mandatory upon this court under Code 1919, (now Code 1942 (Michie)), section 6363."

The evidence in this case presents a strange, though not

unusual set of circumstances and presumptions. In their inception they arouse suspicion, and they require explanation. The lien claimant, Bandy, says he loaned $2,600 to a man, whom he described as a practical stranger, and took as security for its payment a lien upon two automobiles, whose O. P. A. ceiling prices totaled a sum less than the amount of the loan. Thus, in the event of a legal sale, the automobiles would not have yielded a sum sufficient to satisfy the lien against them.

While Bandy says that he did not know that Laughters bore the general reputation of a bootlegger at the time the loan was made, he does not deny that subsequently thereto and prior to the seizure of the car, he became aware of the fact that Laughters was engaged in the illegal liquor traffic.

It is difficult to understand why Bandy, an active, practicing attorney and the judge of a court in the community in which Laughters lived, did not become cognizant of the business and reputation of a man who bore so widely the general reputation of being a "big shot" in the illegal whiskey traffic. But whether that be true or not at the time the loan was made, the subsequent employment of Bandy, as attorney, by Laughters, when the latter was a witness in a case, which involved purchases of whiskey by Laughters from a whiskey dealer in Kentucky put Bandy on notice both as to the character and business of his client. These facts became known to him between the time the loan was made and the car seized. If he desired to protect his lien, he could then have taken the proper steps to do so.

The statements attributed to Bandy after the seizure of Laughters' vehicle rather clearly indicate that Bandy had knowledge of the illegal business in which Laughters was admittedly engaged. Consent, if not connivance, in the use of the mortgaged vehicle for illegal transportation purposes may readily be implied therefrom.

After a consideration of all of the evidence, the circumstances, and the natural and reasonable inferences therefrom, we cannot say that the finding of the trial court is "plainly wrong or without evidence to support it." The

evidence, as we view it, is sufficient to justify a conclusion by reasonable and fair-minded men that Bandy was not ignorant of the use of the automobile in the illegal transportation of whiskey at the time of its seizure.

Having come to this conclusion, it is unnecessary to consider whether or how Bandy may enforce his lien, if any, against the Buick automobile, which has been in the possession of its owner since the giving of the release bond in this proceeding. It is an interesting question, and, so far as we are advised, a novel one in Virginia; but there is no issue in the present case between the owner of the vehicle and the claimant of the lien.

In the cases of *Myown Develop. Corp.* v. *Commonwealth, supra,* and *One International Harvester Co. Truck* v. *Commonwealth,* 159 Va. 1010, 167 S. E. 376, 124 A. L. R. 312 (note), relied upon by the appellant, the facts were materially different from those which appear here.

For the foregoing reasons the judgment of the trial court, refusing to establish the lien claimed by Bandy, and ordering a forfeiture of the automobile and a recovery upon the bond of Laughters for the sum of $1,250, the appraised value of the automobile, and the costs, is affirmed.

*Affirmed.*