# Richmond

## WILLIAM T. WRAY AND OTHERS v. COMMONWEALTH OF VIRGINIA.

January 15, 1951.

Record No. 3731.

Present, Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Bernard Glasser* and *Herman A. Sacks,* for the plaintiffs in error.

*J. Lindsay Almond, Jr., Attorney General,* and *G. Stanley Clarke, Assistant Attorney General,* for the defendant in error.

Gregory, J., delivered the opinion of the court.

This case involves the forfeiture of an automobile, belonging to the defendant, William T. Wray, and used in the illegal transportation of whiskey. Wray financed the purchase of the automobile through the National Bank of Commerce of Norfolk. He had the title registered in his name, showing the lien in favor of the bank.

Samuel C. Cason was the driver of the automobile when it was captured by the police officers of the city of Norfolk. He was accompanied by James Woodyard, Frank J. Bonner, and a colored boy, David Joynes.

After the car had been seized Wray, the owner, applied to the proper officers of the city to have it released to him upon execution of a proper bond. An appraisal was made by the Sergeant of the city of Norfolk in the amount of $800, and the defendant, Wray, was required to execute a bond for $1,000, he being principal and John A. Cason and Louise L. Cason sureties. The automobile was thereupon returned to Wray.

Subsequently, the Commonwealth filed its statutory information in the court below for the forfeiture of the automobile, to which Wray and the National Bank of Com-

merce filed their respective answers alleging that they had no knowledge of its illegal use.

The trial judge heard the case without the intervention of a jury and rendered judgment in favor of the Commonwealth against the maker and sureties on the bond for $1,000, to be satisfied by the payment of the appraised value of $800.

It is assigned as error, first, that the court erred in rendering the judgment because it was contrary to the law and evidence and without evidence to support it; secondly, that the court erred in not permitting a tender of the automobile before it entered judgment on the bond; and thirdly, that the court erred in admitting, over the objection of the defendant, Wray, improper evidence.

The National Bank of Commerce is not a party to this appeal and did not join in the motion to set aside the verdict and judgment.

Wray testified that at the time the automobile was seized he had no knowledge of its use in the illegal transportation of ardent spirits; that he was not in the city but had gone to Pennsylvania for a few days and before leaving Norfolk had turned the automobile over to Frank Bonner and Sam Cason, operators of the Crown Service Station and Repair Shop, to be worked on; and that he did not authorize anyone to use it.

The Commonwealth introduced evidence, over the objection of the defendant's counsel, that Wray had the reputation of being a bootlegger. There was also evidence that Samuel C. Cason, who was driving the automobile at the time of its seizure, had the reputation of being a bootlegger; that Cason was a friend and customer of Wray and came to Wray's service station frequently. The evidence further disclosed that Joynes, the colored boy, was working for Cason and formerly had worked for Wray, and that Woodyard, Bonner, Joynes and Cason all worked at the same place with Wray at Olney road and Boush streets. The evidence further discloses that Wray owns a building on

Twenty-fifth street where the Crown Service Station is operated and rents the property to Cason, who conducts the business. Bonner is also engaged at that service station. While Wray was operating the establishment at the corner of Olney road and Boush street, the Police Department of the city of Norfolk received so many complaints concerning the illegal liquor traffic there that they had to station a uniformed police officer at the front door of the establishment and on one occasion Wray had asked Sergeant Phelps "how much ice it would take to cool off Olney road and Boush streets", to which the Sergeant replied, "there is not enough ice in Norfolk to cool that corner off." A partner of Wray had formerly been convicted for violating the Alcoholic Beverage Control Act at this same place of business. The evidence also discloses that Cason had used Wray's truck on November 17th in the illegal transportation of whiskey and Wray interposed no objection to such use.

The particular provisions of the Alcoholic Beverage Control Act involved in this case are subsections (e) and (h) of Title 4, Section 56, of the Code of 1950.

Subsection (e) provides that if the owner or lienor of a seized vehicle desires to obtain possession thereof before the hearing such vehicle shall be appraised and upon the return the owner or lienor may give a bond payable to the Commonwealth in a penalty of the amount equal to the appraised value of the vehicle, plus court costs, with security to be approved by the clerk "and conditioned for the performance of the final judgment of the court, on the trial of the information, and with a further condition to the effect that, if upon the hearing on the information, the judgment of the court be that such property, or any part thereof, or such interest and equity as the owner or lienor may have therein, be forfeited, judgment may thereupon be entered against the obligors on such bond for the penalty thereof, without further or other proceedings against them thereon, to be discharged by the payment of the appraised value of the property so seized and forfeited and costs, * * *.

Upon giving of the bond, the property shall be delivered to the owner or lienor."

Subsection (h) provides for the rights of an innocent owner. If it shall appear to the satisfaction of the court that such claimant, if he claims to be the owner, was the actual bona fide owner of a vehicle at the time of the seizure, that he was ignorant of such illegal use thereof, and that such illegal use was without his connivance or consent, express or implied, "* * * the court shall relieve the conveyance or vehicle from forfeiture and restore it to the innocent owner, * * *".

The controlling issues here are whether or not Wray, who claims to be the owner of the vehicle, was ignorant of such illegal use at the time of seizure, and that such illegal use was without his connivance or consent, express or implied.

The fact that the vehicle was being used illegally for the transportation of ardent spirits is not denied or questioned by anyone. The burden of proof was upon the claimant, Wray, to show to the satisfaction of the court that he was ignorant of the illegal use of the vehicle when it was seized. *Bandy* v. *Commonwealth*, 185 Va. 1044, 41 S. E. (2d) 71. The question here is, of course, whether Wray carried the burden of proof. The trial court held that he had not done so.

There were certain important circumstances surrounding this transaction. Wray had operated his establishment at the corner of Olney road and Boush street in such a way that it had the reputation of being a place where illegal whiskey was sold. The police department daily received complaints regarding it and had stationed a uniformed officer there in the doorway to prevent the illegal sales. Samuel Cason, the driver of the car at the time it was seized, and Woodyard, Bonner and the colored boy, Joynes, who were all in the truck at the time, worked at that place of business.

Wray's defense is that he left the vehicle at the service station to be repaired when he left the city to visit his parents in Pennsylvania. The evidence discloses that

on another occasion this same vehicle had been used by Cason in the illegal transportation of alcoholic beverages. Wray is bound to have known, when he left the car with these parties, the kind of business they were engaged in. It would be asking too much of the court to hold that Wray did not know, when he left the car with these parties, that they were engaged in the illegal traffic of alcoholic beverages. Cason, Bonner, Woodyard and the colored boy were all residents of Norfolk and could have been produced to testify in behalf of Wray had he so desired, but he did not summon them. From this failure it is presumed that had they testified, their testimony would have been unfavorable to Wray.

In *Bland* v. *Richmond*, 190 Va. 42, 55 S. E. (2d) 289, the court said: "It is well established that the failure of a party to call a material witness under such circumstances raises a legal presumption that his testimony would not have been favorable to the party failing to call him." Counsel for Wray lean heavily upon the case of *Patterson* v. *Commonwealth*, 187 Va. 913, 48 S. E. (2d) 357. However, we think that case is distinguishable. There Patterson was not associated in any way with the operator of the filling station where his car was left and there was no evidence tending to show that the car had been used or that he had authorized anyone to use it. Here the circumstances are quite different.

Counsel for Wray insist that his testimony to the effect that he had no knowledge of the illegal use to which the car was going to be put is uncontradicted. It is true no witness has directly contradicted Wray, but the many circumstances heretofore related tend to contradict him.

Before the hearing Wray made an attempt to surrender the vehicle to the authorities in an effort to escape liability on the bond, but we think the court properly held that the bond which was given and authorized by the statute was conditioned that the parties would abide the order of the court. The bond was issued for the vehicle and it was to be discharged under the authority of the statute by the payment of the appraised value of the vehicle.

It is assigned as error that the court received evidence to the effect that Wray was a bootlegger.

There is no doubt that the vehicle was seized by the officers while it was illegally transporting fifty quarts and thirty-two pints of whiskey purchased from an ABC store, nor is there any doubt that Cason, who was driving the car, and the others caught by the officers at the time of the seizure, knew that there were unlawful liquor sales made at the service station. In fact, Wray admitted to Officer Phelps that he was engaged in selling liquor illegally at that establishment and that he had eight pints there for sale. Cason was a known bootlegger and on another occasion Wray acquiesced in the use of his car by Cason to deliver liquor to a customer. The establishment was widely known for its illegal liquor transactions and the police department had had numerous complaints of it. Wray is bound to have known that this place was a bootleg joint when he left his car there. He was to be gone for several days and out of the State. He knew that Cason, one of those in charge, had used his car to deliver liquor illegally sold on another occasion and yet with all this knowledge he left his car with these bootleggers. The circumstances were sufficient to bring home knowledge of the illegal manner in which the car might be used or at least they are sufficient to establish that the illegal use was with his consent, express or implied.

We think the Attorney General, in his brief, effectively disposes of the question of the reputation of Wray and the others for being bootleggers. He has this to say, in which we concur: "It is true that over the objection of the defendant Wray evidence was introduced to the effect that his reputation was that of one trafficking in whiskey, and likewise the same evidence was given as to some of his associates in this matter. It must be noted that this is not a criminal procedure, but is one of a civil nature. In civil matters the reputation of the litigant may be shown where it is pertinent to the issue. Certainly, in a case involving illegal transportation of alcoholic beverages and the knowl-

edge, consent and connivance of the owner of a car in its use for such purposes, the question of whether or not he bore the reputation of being a bootlegger, and those with whom he associated also bore that reputation, is relevant to the issue and may be shown. In support of this premise, see *Chrysler Roadster* v. *Commonwealth*, 152 Va. 508, 147 S. E. 243, a case in which the confiscation of an automobile was involved, and the reputation of the owner of the car and the members of his family as being engaged in the illegal handling of whiskey, was presented to the Court."

See 48 C. J. S., Intoxicating Liquors, Section 397, page 663, footnote 50.

██ Knowledge of illegal use of a vehicle must in many cases be shown by circumstantial evidence. Sometimes it can be shown in no other way. The circumstances that Cason, an associate of Wray, who was driving the car at the time it was seized, was engaged in the illegal traffic in liquor, and that Wray was also so engaged, and that their place of business was widely known as a bootleg joint, are certainly relevant circumstances which reasonably could give rise to an inference that Wray knew he was leaving his car with a bootlegger for several days and further that there was likelihood that it would be used in the illegal transportation of liquor. In other words, the reputation of Wray and his associates was relevant to the issue in the case. It threw light upon it. Its relevancy was a matter for the sound discretion of the trial court.

█ That this is a civil case there can be no doubt. *Ives* v. *Commonwealth*, 182 Va. 17, 27 S. E. (2d) 906.

We are of opinion that the judgment of the trial court should be affirmed.

*Affirmed.*