Present: All the Justices

HERBERT F. TOWNES, JR., ET AL.

                                  OPINION BY
v. Record No. 190834           CHIEF JUSTICE DONALD W. LEMONS
                                  JUNE 18, 2020

VIRGINIA STATE BOARD OF ELECTIONS

FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
William E. Tomko, III, Judge

In this appeal challenging the removal of two members of the City of Hopewell Electoral Board ("Board"), we consider whether the Circuit Court of the City of Hopewell ("circuit court") erred when it instructed the jury regarding the proper burden of proof, whether the circuit court improperly allowed the Commonwealth to expand its grounds for removal beyond the grounds pled in its sworn petition for removal ("Petition"), and whether the circuit court abused its discretion when it excluded certain defense evidence at trial.

I. Facts and Proceedings

A. The City of Hopewell Electoral Board

Herbert F. Townes, Jr. ("Townes") and David W. Silvestro ("Silvestro") were appointed to the Board in 2014 and 2018, respectively, for three-year terms. Townes was reappointed for a three-year term in 2017 following his initial term on the Board. The Board consisted of Townes, Silvestro, and one additional member who was not subject to this removal action. Prior to taking their seats on the Board, Appellants both signed the following oath pursuant to Code § 24.2-120 and Article II, Section 7 of the Constitution of Virginia:

> I [] do solemnly swear (or affirm) that I will support the
> Constitution of the United States and the Constitution of the State
> of Virginia, and that I will faithfully and impartially discharge and
> perform all the duties incumbent upon me as a member of the City
> of Hopewell Electoral Board [] according to the best of my ability,
> so help me God.

As members of the Board, Appellants were responsible for ensuring the fair, uniform, and efficient administration of elections in the City of Hopewell ("Hopewell") and timely appointment of a General Registrar. Among other duties, Appellants were to "[e]nsure the creation, production and proper custody of ballots," to "[a]ssist in absentee voting when requested by the Director of Elections," and to determine the "validity and counting of provisional ballots." The "Electoral Board Job Description" further required Appellants to conduct "meetings in accordance with the Freedom of Information Act" ("VFOIA").

B. The Petition

In April 2018, the Virginia State Board of Elections ("VSBE")[1] received information that Townes and Silvestro had neglected their duties in ways that had a material adverse effect on the administration of elections in Hopewell. On October 9, 2018, the VSBE filed a Petition in the circuit court to remove Townes and Silvestro from the Board. The Petition alleged that, since at least April 2018, Appellants had "failed to fulfill their statutory obligation to timely and transparently hire and supervise the General Registrar," "actively and repeatedly disregarded the [VFOIA] by holding meetings without proper notice to the community, and, in some cases, the third member" of the Board, and "refused to adhere to recognized standards of fairness and uniformity in preparation of ballots for the November 2018 mid-term election."

In the Petition, the VSBE specifically alleged the following based on its investigation after the initial complaints from "Hopewell residents and elected officials." First, as the prior General Registrar's announced retirement date of April 30, 2018, approached, the Board had not

---

[1] The VSBE is the three-member body which oversees the Virginia Department of Elections. Code § 24.2-103 provides that "The State Board, through the Department of Elections, shall supervise and coordinate the work of the county and city electoral boards and of the registrars to obtain uniformity in their practices and proceedings and legality and purity in all elections."

2

appointed a replacement. As a result, as of May 1, the VSBE alleged that "there would [have been] no staff in the Hopewell General Registrar's office qualified to offer absentee ballots or process voter registration materials" in violation of state and federal law. To remedy this, the outgoing General Registrar named his deputy to serve temporarily as General Registrar until the Board named a replacement, which it did on May 8.

Second, the VSBE alleged that the Board "met on at least three occasions—April 2, 12, and 23—without providing proper notice of the meeting to the public" as required by VFOIA. Particularly, after "researching notice" for a specific meeting, the Vice Mayor noted in a complaint from a constituent that the "City Clerk has not received meeting notifications from the [General] Registrar's Office (or the Board itself)" for approximately four months. As a result of this, and other allegations, the VSBE concluded that Silvestro and Townes "repeatedly failed to follow [VFOIA] open meeting requirements."

Third, the VSBE alleged that in August 2018, it learned that "Hopewell's ballot proofs did not display candidate names in a uniform manner; some candidate's names were presented in all capital letters while other candidate's names appeared in a mix of capital and lower-case letters." The Virginia Ballot Standards, updated by the VSBE in March 2018, explain that consistent case is essential to ensure uniformity and fairness to all candidates on the ballot. Specifically, the Ballot Standards direct localities "to not list any names in all capital letters." Code § 24.2-613 states that ballots "shall comply with the requirements of this title and the standards prescribed by the [VSBE]." Consequently, the VSBE informed the Hopewell General Registrar on two occasions that the ballot proofs did not comply with the VSBE case standards. Nevertheless, the Board met and voted 2-to-1 to maintain the inconsistent capitalization of

certain candidates' names on the ballot. Townes and Silvestro cast the two votes to "re-submit the non-uniform ballot" to VSBE for approval.

The VSBE attached 138 pages of exhibits to the Petition to provide more detail about the alleged VFOIA violations. In a meeting on September 20, 2018, the Chairman of the VSBE stated that "he had never received such a volume of complaints for any locality." The exhibits included evidence of the following: When selecting a new General Registrar, there was "no vote in open session . . . which is required under [VFOIA]." According to a General Registrar candidate, when Silvestro arrived 45-minutes late to her interview, he stated that he "was in a meeting with another Electoral Board member." This "set off a red flag as there was no scheduled [Board] meeting for that morning," the third member of the Board "was not aware of the meeting, and there are no minutes from that meeting, so [the candidate] knew these two members were already in violation of [V]FOIA rules." The VSBE Commissioner received "complaints includ[ing] missing meeting minutes, meeting changes or cancellation without notification in compliance with [V]FOIA laws, and more." In a VSBE meeting considering the ongoing issues in Hopewell, the third member of the Board "said the other two [Board] members often deliberated on situations outside of public meetings," including on the ballot issue. Finally, the Vice Mayor wrote the following in an email related to VFOIA:

> The attached agenda does not have any action items identified, minutes included, and a motion identified that complies with [V]FOIA to enter Closed Session, [or] a motion to leave Close[d] Session. In addition, I see items listed under 'Old Business' that have not been identified in any other Electoral Board Agenda. When I requested prior meeting notices, agendas and minutes, it became clear that they may not exist, due to the fact that they have not been produced . . . . I have already contacted the [V]FOIA Council about concerns related to all Electoral Board Meetings since January 31st, and the validity of all actions taken if all meetings prior to now have not met [V]FOIA laws.

4

After receiving the Petition, the circuit court issued a rule to show cause why Townes and Silvestro should not be removed from the Board. The rule to show cause stated that VSBE had "represented to the Court that Mr. Herbert F. Townes, Jr.'s and Mr. David W. Silvestro's neglect of their duties had a material adverse effect on the administration of elections" in Hopewell and that the "grounds for this are more fully detailed in the [P]etition." The same day, at the request of the Commonwealth's Attorney for the City of Hopewell, the circuit court entered an order appointing a designee of the Office of the Attorney General "to act on behalf of the Commonwealth in the litigation and/or investigation of the above styled case."

C. Pre-trial Motions

Prior to the jury trial, the circuit court entertained several motions. First, the Commonwealth filed a "Motion to Establish Burden of Proof." The Commonwealth argued that "the evidentiary standard to be used in the burden of proof analysis is the 'preponderance of the evidence" and Townes and Silvestro had the burden of proof to show that they "should not be removed from office." In response, Townes and Silvestro argued that "[d]ue to the highly penal nature of the quasi-criminal removal proceeding, the burden rests squarely on the State to prove that the defendants violated the standard articulated in [Code] § 24.2-233." Further, Townes and Silvestro cited to *Commonwealth ex rel. Davis v. Malbon*, 195 Va. 368, 369-70 (1953), and *Warren v. Commonwealth*, 136 Va. 573 (1923), contending that the proper burden of proof was "clear and convincing evidence." After hearing argument on this issue, the circuit court ruled that "it is the Commonwealth's burden" and "that burden is by the preponderance of the evidence."

Second, the circuit court heard argument on Townes' and Silvestro's request for interrogatories and production of documents. The Commonwealth objected, arguing that

discovery was improper because the proceeding was quasi-criminal in nature and the removal statute did not contain a discovery provision. Further, the Commonwealth argued that they had provided "138 pages" of exhibits in the Petition because "this isn't the kind of case where discovery is going to happen, and we need to give them what we need to give them to try the case." In response, Townes and Silvestro argued that the removal proceeding is a "civil and not a criminal proceeding and subject to the rules governing civil actions." The circuit court ruled that "this is a civil case, and that as a civil case, it is bound by the [r]ules of [c]ivil [d]iscovery."

Following this ruling, the Commonwealth requested a protective order "as to the scope of discovery and the volume." The Commonwealth objected to discovery requests made for "issues about training" and reports from government agencies regarding the VSBE. During that hearing, the circuit court stated it was "not prepared to make a ruling on that" and requested that the parties "file the appropriate motions."

Thereafter, the Commonwealth filed a "Motion for a Protective Order and to Limit Examination." Pursuant to Rules 4:1(c) and 4:5(d), the Commonwealth moved the circuit court for a "protective order as to certain topics of propounded discovery" and to "limit the scope of a proposed deposition." Specifically, the Commonwealth objected to the following topics: (1) the training provided to Townes and Silvestro by VSBE; (2) the "training provided to . . . the non-party [G]eneral [R]egistrar" by VSBE; and (3) the revised "policies and procedures developed or implemented by" VSBE "regarding supervision and training of local election officials in response to a governmental audit completed by the Joint Legislative Audit and Review Commission" ("JLARC Report"). In support of its motion, the Commonwealth argued that any evidence regarding allegedly insufficient training was "clearly unduly prejudicial and not probative," and "therefore will never be admissible at this trial." The circuit court limited

6

discovery "to training of the [Appellants] as to (a) noticing of meetings under the [VFOIA], and (b) the preparation of ballot proofs and the correct form of a ballot." The circuit court concluded that the JLARC Report and VSBE's response to the report was "not within the scope of discovery."

Upon completion of discovery, the Commonwealth filed three motions. First, it filed a motion in limine to exclude evidence of the General Registrar/Electoral Board Workshop ("GREB Report") and the dissemination of the "Electoral Board Job Description" to Appellants. The Commonwealth argued that this evidence was irrelevant, unfairly prejudicial, and misleading. The GREB Report was based on data gathered before 2016, which was before the period relevant to this case. The Commonwealth noted that Code § 24.2-106.01(C) requires those nominated to local electoral boards to certify that they have read the job description for such a position and to affirm that they will faithfully discharge all duties and responsibilities set forth in that description.[2] It argued that the existence of duties that Appellants were accused of violating did not turn on whether they received a copy of the electoral board job description, but rather on the oath that they each took under Article II, Section 7 of the Constitution of Virginia.

Second, the Commonwealth filed another motion in limine to exclude evidence regarding the training given to Appellants by VSBE, any matters concerning the JLARC Report, and the political party affiliation of any party or witness. The Commonwealth continued to assert that the exercise of the electoral board members' statutory obligations was predicated on the oaths they swore under Article II, Section 7 of the Constitution of Virginia, not their level of training. The Commonwealth argued that the JLARC Report was not relevant and that any evidence

---

[2] Code § 24.2-106.01 applied only to Silvestro because it was enacted after Townes was sworn into office. Accordingly, Townes' oath was taken solely under the Constitution of Virginia.

7

regarding it would be unduly prejudicial. It further contended that the evidence about any person's political affiliation was not relevant to "whether or not [Townes and Silvestro] should be removed," and any such evidence had "no articulable probative value." The Commonwealth argued that the evidence should be excluded because it would be "extraordinarily prejudicial to the jury" and "mislead the jury to believe that party affiliation has bearing on evaluating" Townes and Silvestro's conduct in office.

Third, the Commonwealth's final pretrial motion asked the circuit court to limit the jury's factual determinations to "whether [Townes and Silvestro] noticed meetings, made public copies of meeting minutes, conducted required proceedings in an open forum, and produced uniform ballots." It argued that the jury "should be charged with resolving questions of fact related to the actions or inactions of the [Appellants]," and the circuit court should "determine the legal question of whether the [Appellants'] actions or inactions amounted to neglect or incompetence in the performance of their duties." The Commonwealth contended that whether Townes and Silvestro "violated [V]FOIA is a question of law."

Townes and Silvestro opposed all three motions. They argued that their training, the JLARC Report, and the GREB Report were relevant to whether their actions called for removal under Code § 24.2-233(1). Further, they asserted that evidence about the two reports and political affiliation could become relevant to show bias of certain witnesses. Appellants also argued that the motion to limit the jury improperly characterized certain issues as matters of law and improperly amended the petition by adding VFOIA violations. Specifically, Townes and Silvestro contended that the allegations in the Petition regarding VFOIA were not sufficiently broad to permit the jury to consider whether they "properly noticed 2018 electoral board meetings, whether meeting agendas were made available for public inspection, whether meeting

8

minutes were kept and posted on Hopewell's website, and whether Townes and Silvestro voted for a [G]eneral [R]egistrar in a closed session."

After a hearing, the circuit court granted all three of the Commonwealth's motions. The circuit court determined that it was "not going to allow the mention of party affiliation" because it would not be "appropriate to mention to the jury in this case." Additionally, the circuit court ruled that "it makes no difference whether these folks are Republicans [or] Democrats," and that it was "not going to have every juror questioned about their party affiliation." The circuit court further stated that it had "given a lot of thought to this issue of training," but ultimately concluded that it did not "see how training would be relevant with regards to the trial itself" because the "duties owed by these particular members of the board is not to their training, the duty owed is to the law and constitution." For similar reasons, the circuit court concluded that the JLARC Report was "irrelevant." Next, the circuit court held that the GREB Report was "not relevant" because what the report "did back in 2016, and how that may have impacted those folks' duties, their duties are their duties." Accordingly, the GREB Report and evidence of the dissemination of the "job descriptions" were not relevant and would be excluded.

The circuit court then addressed Appellants' contention that the Commonwealth had improperly expanded its pleadings. The circuit court held that "the petition was broad enough to encompass those things in which the Attorney General's office ha[d] alleged" because the pleadings had not been amended "in such a way that [Townes and Silvestro were] not on proper notice or that it prejudice[d] them in some way." Finally, the circuit court ruled that "the jury should make all the findings of fact in this particular case" because the court "believe[d] that any findings with regards to anything being materially adverse also should be made by the jury."

9

But, the circuit court would then "make the determination" about removal based upon the jury's "findings of fact."

## D.  Trial

The case then proceeded to a two-day jury trial.  The Commonwealth introduced evidence regarding at least a dozen meetings or meeting cancellations in violation of the notice requirements under VFOIA.  At the time, there was no objection to this evidence from opposing counsel.  The Commonwealth then introduced the "Electoral Board Job Description" and the duties incumbent upon Appellants such as "ensur[ing] the creation and production and proper custody of ballots."  Additionally, the Commonwealth introduced evidence that Appellants approved ballot proofs where some candidates' names were written in "all caps" while other candidates names were in "mixed case."  These ballots did not comply with Code § 24.2-613 because "all ballots [] have to be uniform," so as to prevent an "unfair advantage" to a candidate. The Commonwealth also introduced the oaths taken and signed by both Townes and Silvestro. Finally, during cross-examination of Silvestro, the following exchange occurred regarding VFOIA:

> The Commonwealth: "You're telling me right now because you're not the chair or the secretary, you have no obligations with respect to compliance to [V]FOIA as an electoral board member?"
>
> Silvestro: "That's why we have a chair and secretary . . . you have two people that are sitting there and that's their duties."

Appellants put on evidence regarding the "dispute about ballot proofs."  Specifically, the ballot form required a candidate to "write their name as it is to appear on the ballot."  This created an issue because three candidates wrote their names in all capital letters, which did not comply with the VSBE's Ballot Standards.  Townes and Silvestro voted for the "ballot style to remain as per the candidate's selection of choice," even though the selection of choice did not

comply with the Ballot Standards. After the presentation of evidence, Townes and Silvestro objected to the "additional reference of alleged [V]FOIA violations beyond what was actually alleged in the petition."

The circuit court then instructed the jury to apply a preponderance of the evidence standard. The circuit court instructed the jury to find in favor of the Commonwealth and against Appellants if the Commonwealth has proven its case by the greater weight of the evidence. It explained that the "greater weight of all the evidence is sometimes called the preponderance of the evidence. It is the evidence which you find more persuasive." Appellants objected, stating "we thought that the standard of proof should have been clear and convincing evidence."

The jury found that both Townes and Silvestro "either neglected or misused [their] office or [were] incompetent in the performance of [their] duties" and "that the neglect of duty, misuse of office, or incompetence in the performance of duties . . . did have a material adverse effect upon the conduct of the office of the Hopewell Electoral Board." Pursuant to this verdict from the jury, the circuit court ordered the removal of Townes and Silvestro from the City of Hopewell Electoral Board, and they appealed to this Court. We granted an appeal on the following assignments of error:

1. The Circuit Court erred when it instructed the jury that the Commonwealth's burden of proof was a showing by the preponderance of the evidence as opposed to clear and convincing evidence.

2. The Circuit Court erred in allowing the Commonwealth to expand its grounds for removal of the respondents beyond the grounds pled in its sworn Petition for Removal of Appointed Officer.

3. The Circuit Court abused its discretion and erred excluding various defense evidence including: training and education of the respondents; the 2018 Virginia Joint Legislative Audit and Review Commission report regarding the Operations and Performance of Virginia's Department of Elections; the 2016 Report from the

11

General Registrar/Electoral Board Working Group; and political party affiliation of witnesses.

## II. Analysis

### A. Standard of Review

In this appeal, we adhere to the following standards of review: First, "[q]uestions relating to burden of proof, including the standard of proof and which party bears the burden to meet it, are questions of law reviewed de novo." *La Bella Dona Skin Care, Inc. v. Belle Femme Enterprises, LLC*, 294 Va. 243, 257 (2017) (internal quotation marks and citations omitted). Second, a "trial court's exercise of its discretion in determining whether to admit or exclude evidence will not be overturned on appeal absent evidence that the trial court abused that discretion." *May v. Caruso*, 264 Va. 358, 362 (2002).

### i. Statutory Scheme for Removal

Code §§ 24.2-103(C), 24.2-234, and 24.2-235 permit the VSBE to petition a circuit court to initiate removal proceedings against any member of a local electoral board who fails to discharge his duties in accordance with the law. Code § 24.2-235 details the removal process:

> A petition for the removal of an officer shall state with reasonable accuracy and detail the grounds or reasons for removal and shall be signed by the person or persons making it under penalties of perjury. The circuit court shall not dismiss the petition solely because of an error or omission in the form of the petition relating to its statement of the grounds or reasons for removal if such error or omission is not material in determining whether the statement of the grounds or reasons for removal provides a reasonable basis under § 24.2-233 to consider the removal of the officer.
>
> As soon as the petition is filed with the court, the court shall issue a rule requiring the officer to show cause why he should not be removed from office, the rule alleging in general terms the cause or causes for such removal . . . . Upon return of the rule duly executed, unless good cause is shown for a continuance or postponement to a later day in the term, the case shall be tried on

12

the day named in the rule and take precedence over all other cases on the docket.

A basis for removal under Code § 24.2-233 includes the "neglect of duty, misuse of office, or incompetence in the performance of duties . . . that has a material adverse effect upon the conduct of the office." Code § 24.2-237 states that the "attorney for the Commonwealth shall represent the Commonwealth in any trial under this article," and the "Commonwealth and the defendant shall each have the right to appeal to the Supreme Court for a writ of error."

## B. Burden of Proof

"Courts have no inherent power to remove a public officer from office," and such authority "is derived entirely from the provisions of the pertinent statutes." *Commonwealth ex rel. Davis v. Malbon*, 195 Va. 368, 374 (1953). This Court "presume[s] that when the General Assembly creates a new, statutory cause of action, it intends the preponderance standard to apply unless it expressly states otherwise." *Ballagh v. Fauber Enters., Inc.*, 290 Va. 120, 124-25 (2015). The statutory scheme in this case does not "expressly state[]" that the General Assembly intended a burden of proof higher than the preponderance of evidence standard. *Id*. at 125. But, the statutory scheme for removal at issue in this case was not a "new" statutory cause of action.[3] When "the General Assembly acts in an area in which one of its appellate courts has already spoken, it is presumed to know the law as the court has stated it and to acquiesce therein."

---

[3] The first iteration of the removal statute was in former Code § 2705 (1919). When the entire Code of Virginia was recodified in 1950, § 2705 became Code § 15-500 *et seq.* under Title 15, a new title. In 1962, Title 15 was revised, so Code § 15-500 *et seq.* became § 15.1-63 *et seq.* These sections were subsequently repealed and replaced in 1975 with the enactment of Title 24.1, Elections, which resulted in the removal statute being contained in Code § 24.1-79.1. Finally, in 1993, Title 24.1 was repealed and replaced with Title 24.2, resulting in the removal statute being embodied in current Code § 24.2-233. Although the removal statute has moved through recodifications and replacements, the statutory scheme has remained part of the Code since 1919.

13

*Weathers v. Commonwealth*, 262 Va. 803, 805 (2001); *see also Lambert v. Sea Oats Condominium Ass'n, Inc.*, 293 Va. 245, 254 (2017) ("We presume that when the General Assembly enacts legislation, it is aware of this Court's precedents."). Therefore, "if the legislature intends to countermand such appellate decision it must do so explicitly." *Weathers,* 262 Va. at 805.

This Court previously interpreted the predecessor statutes governing the removal of a public officer in *Warren v. Commonwealth*, 136 Va. 573 (1923), and *Malbon*. In *Warren,* we considered a statute governing the removal of the Commissioner of Revenue for the City of Hopewell. We held that the statutory authority to remove public officials is a "disciplinary power" that is often treated as taking on "the nature of a criminal action." *Warren,* 136 Va. at 592. In that case, the jury found in favor of the commissioner. Nevertheless, the circuit court set aside the verdict and entered final judgment removing the commissioner from office under former Code § 6251 (1919). On appeal, we characterized the cause of action as a "quasi criminal" proceeding, "which although not a criminal case is one highly penal in its nature." *Id*. at 594. We concluded that the circuit court erred because former Code § 6251 only permitted circuit courts to set aside verdicts in civil actions. Because removal proceedings are "quasi-criminal" in "character," former Code § 6251 did not apply, and the circuit court therefore "exceeded its jurisdiction" by setting aside the jury's verdict. *Id*. at 591, 595.

In *Malbon*, a case involving a petition to remove a sheriff, the Commonwealth objected to a jury instruction which "put[] the case almost, if not entirely, on the footing of a criminal case" and "required more than a preponderance of the evidence." *Malbon*, 195 Va. at 378. On appeal, we affirmed the judgment below and held that because a removal action is quasi-criminal and highly penal in nature, "the burden [is] upon the Commonwealth to prove by clear and

14

convincing evidence that [the] defendant was guilty of one or more of the charges enumerated in the [removal] statute and set forth in the complaint." *Id*. at 379. This higher standard protects public officers from removal proceedings as a "mere means of petty persecution." *Id*.

A proceeding for removal of a public official is quasi-criminal in nature because "it is one which is primarily public in its nature, and one in which the Commonwealth is the party plaintiff." *See Johnson v. Woodard*, 281 Va. 403, 411 (2011). "A petitioner in a removal action is analogous to a victim in a criminal proceeding." *Id*. "[B]ecause a proceeding to remove a public officer is highly penal in nature, . . . the statute governing such a proceeding must be strictly construed." *Commonwealth v. Williams*, 295 Va. 90, 95 (2018) (internal quotation marks and alterations omitted). These proceedings have "been characterized as a special proceeding—a proceeding *sui generis*." *Malbon*, 195 Va. at 374.

Because removal proceedings are quasi-criminal in nature due to the high penalty they impose on a removed official, as this Court held in *Malbon*, 195 Va. at 379, the correct burden of proof is clear and convincing evidence.[4] The General Assembly has taken no action to

---

[4] The removal proceedings are governed by a heightened burden of proof because of their quasi-criminal, highly penal nature. Nevertheless, civil discovery is permissible. "Generally, the granting or denying of discovery is a matter within the discretion of the [circuit] court and will not be reversed on appeal unless 'the action taken was improvident and affected substantial rights.'" *O'Brian v. Langley Sch.*, 256 Va. 547, 552 (1998) (quoting *Rakes v. Fulcher*, 210 Va. 542, 546 (1970)) (alteration in original). The circuit court can limit "the frequency or extent of" discovery methods under Rule 4:1(b)(1). *See State v. Baush*, 352 Wis.2d 500, 505 (Wis. 2013) (holding that unless "a different procedure is prescribed" by statute, the rules of civil procedure, "including the civil discovery chapter" apply); *In re Artis*, 883 A.2d 85, 101 (D.C. 2005) (holding that in a quasi-criminal proceeding "discovery would be subject to the limitation of reasonableness under the circumstances"); *City of Danville v. Hartshorn*, 53 Ill.2d 399, 404 (Ill. 1973) ("We believe that whether the discovery provisions of the Civil Practice Act may be invoked [in a quasi-criminal action] should be within the discretion of the trial court.") (alteration added); *In re Estate of Popp*, 94 Ohio App.3d 640, 648-49 (Ohio Ct. App. 1994) (holding that although "quasi-criminal in nature," "the Rules of Civil Procedure as practiced in the probate court are applicable").

specifically countermand this holding in any of the subsequent amendments affecting the removal statute. In this case, the circuit court erred by setting the burden of proof as a preponderance of the evidence, a lower standard than required by this Court's precedent. Accordingly, we will reverse the judgment below based upon the circuit court's error in setting the burden of proof.

### C. Expansion of Grounds for Removal

Under the notice pleading standard,[5] the Petition "contain[ed] sufficient allegations of material facts to inform a defendant of the nature and character" of VSBE's VFOIA claim. *Preferred Systems Solutions, Inc. v. GP Consulting, LLC*, 284 Va. 382, 407 (2012); Rule 1:4(d).

The language in the Petition specified that on "*at least* three occasions" the Board met without providing proper notice to the public as required by VFOIA. Appellants do not dispute that the three dates VSBE referred to in the enumerated portions of the Petition were sufficient to have violated VFOIA. Generally, a pleading must state the essential facts and legal claims to notify the defendant of the nature of the case. *See generally City of Norfolk v. Vaden*, 237 Va. 40, 44 (1989); *Bolling v. Acceptance Corporation*, 204 Va. 4, 9 (1963) ("The function of pleading is to inform the opposing party of the nature of the case to be made against him."); *see also* Rule 1:4(d) and (j). The Petition alleged numerous VFOIA violations since at least April 2018, alleging that "Silvestro and Townes repeatedly failed to follow [VFOIA] open meeting requirements." Information about these violations were also contained in the 138 pages of exhibits attached to the Petition.

---

[5] As explained in footnote 4, removal proceedings are quasi-criminal in nature, which increases the requisite burden of proof but maintains aspects of civil trials such as civil discovery and pleading standards.

16

At trial, the Commonwealth introduced evidence including: more than three meetings that did not comply with VFOIA; evidence of meeting agendas that were not made available for public inspection; and evidence of meeting minutes not being created or posted on Hopewell's website. Appellants contend that introducing evidence regarding the meeting agendas and minutes exceeded the allegations in the Petition. We disagree.

The Petition and its attached exhibits gave Townes and Silvestro sufficient notice of the scope of the VFOIA violations and "clearly inform[ed them] of the true nature of the claim." Rule 1:4(d). The Petition specifically stated that on "*at least* three occasions" the Board had met without proper notice to the public. The Commonwealth then introduced evidence of more than three occasions on which the Board met without proper notice. The allegations in the Petition "clearly inform[ed them]" that the VSBE intended to introduce at least three occasions, if not more, on which Appellants failed to properly notice meetings in compliance with VFOIA.

Additionally, the Petition alleged that Townes and Silvestro "repeatedly failed to follow [VFOIA] open meeting requirements." Code § 2.2-3707 requires that "all meetings of public bodies shall be open," "[e]very public body shall give notice" of its meetings, "the proposed agenda and all agenda packets . . . shall be made available for public inspection," and the recordation of minutes "at all open meetings," which are "deemed public records and subject to the provisions of [Code § 2.2-3707]." The Commonwealth alleged that Townes and Silvestro did not comply with these requirements for open meetings under VFOIA. Therefore, the circuit court did not abuse its discretion by permitting the presentation of evidence showing the lack of meeting agendas and minutes in addition to the meetings which were held without proper notice.

## D. Exclusion of Evidence

"[T]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court," and "exercise of that discretion will not be disturbed on appeal in the absence of clear abuse." *Gross v. Stuart*, 297 Va. 769, 771 (2019) (internal quotation marks and citations omitted). Under an abuse of discretion standard, "a reviewing court . . . does not reverse merely because it would have come to a different result in the first instance." *Martin v. Lahti*, 295 Va. 77, 87-88 (2018).

Evidence is relevant if it "tends to cast any light upon the subject of the inquiry." *McNeir v. Greer-Hale Chinchilla Ranch*, 194 Va. 623, 629 (1953). *See* Va. R. Evid. 2:401. If the evidence is "relevant to establish defendant's claim, and violated no specific rule of admissibility, it should not [be] stricken" and if "it help[s] to establish the defense or claim relied upon by defendant, or if it add[s] force and strength to other evidence bearing upon the issue or issues presented, then defendant [is] entitled to have it considered by the jury." *Id.* at 628. "[E]vidence that is factually relevant may be excluded from the jury's consideration if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice." *Norfolk & Portsmouth R.R. v. Wilson*, 276 Va. 739, 743 (2008); *see Lane v. Sponden*, 290 Va. 235, 251 (2015); *Harman v. Honeywell Int'l, Inc.*, 288 Va. 84, 100 (2014).

### i. Training

Code § 24.2-120, effective in 2012, provides that "[e]ach member of an electoral board . . . shall take and sign the oath before performing the duties of his office." That oath requires electoral board members to swear that they "will faithfully and impartially discharge all the duties incumbent upon" them "to the best of" their ability. Va. Const. art. II, § 7. But, the VSBE "shall supervise and coordinate" with local electoral boards "to obtain uniformity in their

18

practices and proceedings and legality and purity in all elections." Code § 24.2-103(A). The VSBE is also required to "ensure that the members of the electoral boards and [G]eneral [R]egistrars are properly trained to carry out their duties." Code § 24.2-103(B).

Appellants argued below that evidence of their training was relevant because the VSBE is required by statute to train electoral board members. Principally, Appellants argued that the "training is specifically relevant and probative as to their understanding of the duties" imposed on them by their oaths. Appellants argued that the VSBE "didn't train them on how to carry out their job, but they're being removed for failing to meet" their duties. The Commonwealth disagreed, saying that "their obligations as public officials and the oath they take" supersedes any training provided by VSBE.

Although Appellants swore an oath to uphold the law and constitution, evidence of their training, or lack thereof, was relevant to their defense. The circuit court erred by excluding any reference to VSBE's failure to adequately train Townes and Silvestro. Such evidence could have illustrated whether Townes and Silvestro acted reasonably in light of their training. The quality and quantity of Appellants' training was relevant to the jury's determination whether any action or inaction by Appellants had "a material adverse effect upon the conduct of" the Board. The training was relevant to demonstrate whether Appellants carried out their duties in accordance with their instruction from VSBE. Therefore, the circuit court abused its discretion by excluding evidence regarding the training of Townes and Silvestro by VSBE.

ii. The JLARC Report

Townes and Silvestro sought to introduce evidence of "any and all policies and procedures developed or implemented" by VSBE following the JLARC Report. The JLARC Report contained information regarding the training and supervision of local electoral board

19

members and VSBE's failure to properly distribute local electoral board job descriptions. The JLARC Report concluded that the Department of Elections' "oversight d[id] not provide full assurances of election integrity and uniformity, though guidance and training is generally useful." It made recommendations concerning VSBE's training for and supervision of Virginia's local electoral boards. This report outlined the circumstances under which Townes and Silvestro were working and whether VSBE provided them with proper training. Consequently, the JLARC Report was relevant to the jury's determination whether Townes and Silvestro acted reasonably under the circumstances. The circuit court abused its discretion by excluding evidence of the JLARC Report.

### iii. The GREB Report

Townes and Silvestro assert that the GREB Report was relevant to the jury's determination whether their actions necessitated removal under the circumstances. This argument mirrors the argument for the JLARC Report. However, the GREB Report was published in 2016 based on "information compiled prior to 2016," which pre-dated the period relevant to this case. In the Petition, the VSBE alleged that "since at least April 2018," Appellants had neglected their duties, two years after the release of the GREB Report. Accordingly, the circuit court did not abuse its discretion by excluding evidence of the GREB Report.

### iv. Political Party Affiliation of Witnesses

Appellants contend that the political party affiliation of witnesses was relevant due to the "strong undercurrent of politics throughout the events leading up to" their removal. They argue that they should have been permitted to use political party affiliation to cross-examine witnesses to "show signs of prejudice and/or bias." But, Townes and Silvestro failed to proffer bias.

20

Appellants argued against the exclusion of this evidence because they were members of one political party while the third board member was from the opposite political party. This was insufficient to display bias because local electoral boards are comprised in the following way: "[t]wo electoral board members shall be of the political party that cast the highest number of votes for Governor at that election" and one member from the "next highest number of votes in the Commonwealth for Governor." Code § 24.2-106. Therefore, all local electoral boards are comprised of two members of one political party and one member from the opposite political party. Furthermore, evidence of political party affiliation was highly prejudicial and was not probative of any claim or defense. Political party affiliation had no bearing on whether Appellants violated their oaths of office. Consequently, Townes and Silvestro failed to demonstrate that the circuit court abused its discretion in holding that this evidence was inadmissible.

## III. Conclusion

For the reasons stated, we will reverse the judgment of the circuit court and remand for such proceedings as the Commonwealth may properly pursue.

*Reversed and remanded.*